## PHILADELPHIA v. JOSEPH J. MARTIN.
## PHILADELPHIA v. WILLIAM B. IRVINE.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILA-
DELPHIA COUNTY.

Argued April 8, 1889—Decided April 22, 1889.

[To be reported.]

1. A county treasurer, in acting for the commonwealth in the collection of its revenues and accounting for the same, performs distinct and separate duties imposed upon him by law, and in such services he does not act in his capacity as a county officer, but as the officer, agent or employee of the commonwealth.

2. Wherefore, the act of March 31, 1876, P. L. 13, carrying into effect § 5, article XIV. of the constitution, and providing that in counties having over 150,000 inhabitants all legal fees received by county officers shall belong to the county etc., does not require that the compensation received by the county treasurer as commissions for the collection of the state revenues shall be paid into the county treasury.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

Nos. 342, 343 January Term 1888, Sup. Ct.; court below, Nos. 715, 716 December Term 1886, C. P. No. 1.

On January 25, 1887, a case stated was filed, wherein the city of Philadelphia was plaintiff, and Joseph J. Martin was defendant, and which set forth as follows:

That Joseph J. Martin, the defendant, was elected, in the month of November, A. D. 1879, as treasurer of the city of Philadelphia, to serve for a period of three years from the first Monday of January, A. D. 1880.

That, before entering upon the duties of his office he appeared before William S. Stockley, then mayor of the city of Philadelphia, and took the oath of office in form and manner as required by § 1, article VII., of the constitution of Pennsylvania, and also appeared in open Court of Common Pleas, No. 4, for the the county of Philadelphia, and took the following oath:

" Joseph J. Martin, treasurer for the county of Philadelphia,

being duly sworn according to law, saith that he will keep safe and account as directed by law for all moneys received by him for the use of the commonwealth, and faithfully discharge all duties enjoined upon him by law on behalf of the commonwealth of Pennsylvania," and gave two bonds, one to the city of Philadelphia, in the sum of one hundred thousand dollars ($100,000), and the other to the commonwealth of Pennsylvania, in the sum of one hundred and twenty thousand dollars ($120,000), which latter amount was fixed and approved by the judges of the Court of Common Pleas, and the said bond to the commonwealth was transmitted to the auditor-general, in pursuance of the provisions of an act of assembly of the commonwealth of Pennsylvania, entitled, "An act relating to counties and townships, and county and township officers," approved the fifteenth day of April, A. D. 1834.

Copies of said bonds are hereto annexed, marked respectively exhibits A and B, and made part of this agreement.

That the said Joseph J. Martin performed his official duties to the city of Philadelphia, and to the commonwealth of Pennsylvania respectively as prescribed by law, for the full end and term of three years, from the first Monday of January, A. D. 1880.

That it became the duty of the said Joseph J. Martin, as treasurer aforesaid, under the several acts of assembly of the commonwealth of Pennsylvania, to collect and receive, and he did collect and receive, for the use of said commonwealth, all moneys for licences from retailers of merchandise, hotels, liquor dealers, brewers, billiard saloons, venders of patent medicines, brokers, auctioneers, restaurants, taverns, public amusements, theatres, peddlers, and all taxes on loans and on personal property; and also to keep, and he did keep, separate accounts of all moneys so received and collected for the commonwealth, and to forward, and he did forward, statements of the same under oath to the auditor-general of the state; and to pay, and he did pay, said moneys from time to time over to the commonwealth, and settled his accounts in that behalf with the auditor-general of the commonwealth as required by act of assembly.

That the said Joseph J. Martin paid into the treasury of the city of Philadelphia for the use of the said city, during his

term of office fees of every kind received by him from the said debtors to the said commonwealth on the moneys so collected from them as aforesaid, amounting to the sum of thirty-five thousand nine hundred and seventy-eight dollars ($35,978) all of which fees previous to the passage of an act entitled "An act to carry into effect section five of article fourteenth of the constitution relative to the salaries of county officers, and the payment of fees received by them into the state or county treasury in counties containing over one hundred and fifty thousand inhabitants," approved the thirty-first day of March, A. D. 1876, were kept and retained by the then treasurers of the city of Philadelphia.

That the commonwealth of Pennsylvania allowed to the said Joseph J. Martin for his services in collecting and accounting for the several moneys so due the commonwealth, commissions at the rates named in the several acts of assembly relating thereto, to wit: One half of one per cent on all sums collected for the state exceeding two thousand dollars ($2,000); one per cent on sums exceeding one thousand dollars ($1,000) and not exceeding two thousand dollars ($2,000); and five per cent on sums not exceeding one thousand dollars ($1,000), and one per cent on the amount of personal tax paid over.

That it became and was the duty of the said Joseph J. Martin, as treasurer of the city of Philadelphia, to receive, and he did receive, all moneys belonging to the said city, as the same were from time to time paid in to him, and to deposit, and he did deposit the same moneys in the several depositories as directed by the several ordinances of the city of Philadelphia, and did from time to time pay the same to the several creditors of the said city, upon warrants duly countersigned by the controller of the said city of Philadelphia.

That the said city of Philadelphia paid the said Joseph J. Martin during his term of office a salary of ten thousand dollars ($10,000) per year.

That the amount of money collected as aforesaid by the said Joseph J. Martin as treasurer, for the use of the commonwealth, accounted for by him to the auditor-general of the commonwealth and paid over by him to said commonwealth, is as follows:

For the year 1880, the sum of seven hundred and seventy-

six thousand seven hundred and forty-five dollars and thirty-two cents ($776,745.32), for which the said commonwealth allowed him a commission as aforesaid of five thousand four hundred and eight dollars and two cents ($5,408.02).

For the year 1881, the sum of seven hundred and sixty-four thousand five hundred and thirty-six dollars and thirty-two cents ($764,536.32), for which the said commonwealth allowed him a .commission as aforesaid of six thousand two hundred and seventy-four dollars and seventeen cents ($6,274,17).

For the year 1882, the sum of nine hundred and thirty-two thousand and sixty-seven dollars and ninety-eight cents ($932,067.98), for which the said commonwealth allowed him a commission as aforesaid of six thousand two hundred and seventy dollars and thirteen cents ($6,270.13).

That the said commissions were allowed by the commonwealth to the said Joseph J. Martin upon full and final settlements made by the auditor-general of the commonwealth with him in pursuance of the acts of assembly in that behalf, for the collection of, receiving, accounting for and paying over the said moneys due the commonwealth.

That by an ordinance of the select and common councils of the city of Philadelphia, approved by the mayor of the said city on the seventh day of March, A. D. 1883, it was ordained as follows :

"AN ORDINANCE.

" To enter satisfaction on the official bond of Joseph J. Martin, late city treasurer.

" Sec. 1. The select and common councils of the city of Philadelphia do ordain that the city solicitor be, and he is hereby authorized and directed to enter satisfaction upon the official bond of Joseph J. Martin, late city treasurer.

" Provided the city controller shall certify that his accounts are settled, and there is no default."

That the city controller, having duly certified that the accounts of the said Joseph J. Martin were settled, and that there was no default, the city solicitor of said city did, in pursuance of said ordinance, on the twenty-first day of March, A. D. 1883, enter satisfaction of record upon the said official bond of the said Joseph J. Martin as city treasurer and upon the judgment entered thereon.

If the court shall be of opinion that the said three separate commissions so paid and allowed by the commonwealth to the said Joseph J. Martin for the collection of, receiving, accounting for and paying over the said moneys due the commonwealth as aforesaid, should be paid by him into the treasury of the city of Philadelphia for the use of the said city, then judgment shall be entered for the plaintiff in the sum of seventeen thousand nine hundred and fifty-two dollars and thirty-two cents ($17,952.32).

In the event of judgment being entered for the plaintiff, the question whether interest should be allowed on the said three separate commissions from the end of each of the said years, is submitted to the court.

But if, however, the court shall be of opinion that the city of Philadelphia is not entitled to and has no right to said moneys, then judgment shall be entered for the said defendant.

It is further agreed that both parties shall have the right to refer to all ordinances of the city and acts of assembly of the commonwealth relating to the subject matter, the same as if specially herein incorporated.

It is further agreed that either party shall be entitled to a writ of error and all other remedies not herein expressly waived.

And now, May 14th, A. D. 1887, it is agreed that the following shall be added to and made a part of the case stated, with the same force and effect as if originally incorporated therein :

1. That the defendant made returns to the city controller of money collected for the city, but did not make returns to him of money collected for the state, and was not called upon by him to do so.

2. That the defendant never made any returns to the city controller of the commissions retained or received by him from the state, and was not called upon by said controller to do so.

3. That the defendant's predecessors in office were never called on by the controllers of the city of Philadelphia to make return of said money collected for the state, or the said commissioners thereon, and the controllers of said city never audited and settled the accounts of said treasurers relating thereto.

4. That the city controller audited and settled only the account of the defendant relating to city money, and the auditor general audited the account of the defendant relating to state money.

On the same date, a case stated was filed also, wherein the city of Philadelphia was plaintiff, and William B. Irvine was defendant. Excepting the fact set forth " that William B. Irvine, the defendant, was elected in the month of November, A. D. 1882, as treasurer of the city of Philadelphia, to serve for a period of three years from the first Monday of January, A. D. 1883," and the name of the defendant, this case stated was the same in substance as the foregoing.

The cases stated were argued together in the court below, and on January 21, 1888, the court, ALLISON, P. J., delivered the following opinion :

Each of the above cases comes before us upon a case stated for the opinion of the court. They stand upon an agreement of facts which differs only as to the term of office and the amount of commissions paid to the defendants, respectively, by the commonwealth of Pennsylvania, whilst they occupied the office of county treasurer, for services performed to and on behalf of the state. These services were duties which they were required to discharge for the benefit of the state, and had relation solely to the collection, safe keeping and payment over of the portion of the revenue of the commonwealth which had been received by them for the use of the state. To Martin was paid as commissions the. sum of $17,952.32, and to Irving the sum of $20,479.03. That each of the defendants properly performed the duties which were enjoined upon them by law, in the collection of the public moneys and payment of the same to the city and state, is fully admitted ; and it is also agreed that they settled their accounts as city treasurer with the controller of the city ; that the city solicitor entered satisfaction upon their official bonds and upon the judgments entered thereon, under the authority of ordinances of the city, passed for that purpose ; the controller having certified that their accounts had been settled and that there was no default thereon. The only question presented for the decision of the

court is, whether the commissions which were paid to the defendants by the state belong to the city of Philadelphia and should have been paid into the city treasury ; or whether they are the property of the defendants and are of right retained by them.    The contention of the plaintiffs is founded on the fifth section of article XIV. of the constitution of the state and the act of March 31, 1876.    The said fifth section provides, that the compensation for county officers shall be regulated by law, and that all such officers, who are or may be salaried, shall pay all fees which they may be authorized to receive into the treasury of the county or state, as may be directed by law. There is in this section the further provision that in counties containing over a hundred and fifty thousand inhabitants all county officers shall be paid by salary.

   The act of 1876 is entitled, "An act to carry into effect this section of the constitution, and the payment of fees received by county officers into the state or county treasury," etc.    In the first section, it is declared that in all counties having over 150,000 inhabitants, all legal fees received by county officers shall belong to the county, except taxes and fees levied for the state.    Such officers are forbidden to receive fees for their own use or for any other use, except for the use of the county or state, for any official service whatever.    Sections 9 and 15 are also regarded by the plaintiff as supporting their contention.    The ninth section requires county officers who shall collect collateral inheritance taxes and taxes due the state, on writs or legal proceedings, or fees otherwise belonging to the state, to pay the same quarterly into the state treasury.    To this is added the declaration that all commissions on the collection of such taxes as are now, or may hereafter be, allowed by law shall be deemed and taken as part of the regular fees of the officer collecting the same, and shall be accounted for accordingly.    The fifteenth section provides that salaries shall be in lieu of moneys, fees, perquisites or mileage, which are now, or may hereafter be, received by any officer named in the act, and when received by county officers as compensation, fees or perquisites, from any source whatever, shall in all cases belong to the county, and shall be paid into the treasury, except when required to be paid to the state.    The answer which the defendants make to this claim of the city is, that the settlement

with the city controller is final and conclusive between the parties, as it was made with full knowledge of all the facts by the authorized officer of the city; that there is no pretence of fraud, accident or mistake of any kind or in any degree entering into the settlement, which ended with councils directing the city solicitor to enter satisfaction on the official bonds of the defendants.

It is also, and even more strongly contended that the city treasurer, in acting for the state in the collection of its revenues, performs distinct and separate duties, which are imposed on him by the laws of the commonwealth, and that in the discharge of these duties he does not act for the city or in his capacity of city treasurer, but as the officer, agent or employee of the state.

A county treasurer, when called on by the law-making power of the state to act for the state, is designated by his official title, but it by no means follows that he is any the less the functionary of the commonwealth, when duties and obligations to the state, which are in no way connected with the affairs of the county, are imposed on him, from the performance of which he cannot escape.

A review of the legislation of Pennsylvania establishes beyond controversy, that almost from the foundation of the commonwealth, county treasurers have been required not only to perform the special duties connected with the office to which they were appointed or elected for the county, and, at the same time, to act as the officer or agent of the state, discharging the most important trusts in connection with the collection of its revenue. This line of policy, which was adopted prior to 1794, has never been departed from, for the reason that time and experience have fully tested both its usefulness and its efficiency. Nothing has been found injurious to the state or the county by requiring the same officer to serve two masters at the same time, because the interests of the two do not conflict. That the position in which county treasurers stand under the law is, in some respects, anomalous, may be admitted; but if they are to be regarded as holding two distinct offices at the same time, why should that not be allowed, when the functions of the two are not incompatible or repugnant. The legislature have continuously in effect declared that there is no repugnancy, and this ought to be regarded as a conclusive answer to all objections upon this ground.

The language of many of these statutes is not without its significance; describing the duties of city and county treasurers as trusts for the commonwealth, and kindred expressions, which, of themselves, show in what light the state regarded county treasurers when they were required to act for the state in the collection and safekeeping of its revenues, in the issuing of licenses and in bringing suits to recover moneys due to the commonwealth.

The state goes much farther than this in the manifestation of its purpose to lay hold of the treasurers of counties and make them its own officers, by requiring that in all cases a separate bond shall be given to the commonwealth, with a condition which shows a clear purpose to make them, in the discharge of their separate duties to the state, the agent, if not the officer of the state. The condition reads: " He shall keep safe and account for all moneys received by him for the use of the commonwealth, and shall faithfully discharge all duties assigned to him by law in behalf of the commonwealth of Pennsylvania." The bond which is given to the city is conditioned to perform the duties of city treasurer as the same are defined by law and the ordinances of the city of Philadelphia. In every essential particular these bonds differ; each one standing by itself and for the benefit of its separate obligees, and is given to secure different and independent results; one to protect the county and the other the interests of the state.

As the state has, from time whereof the memory of man runneth not to the contrary, imposed separate duties on county treasurers for her separate benefit, so has it always recognized its obligation to pay to the persons or officers on whom such duties have been imposed, compensation for their services. The rate at which such compensation has been made has always been prescribed by law, being in the form of commissions or percentage on the amount collected. This has never been treated or designated as a fee or as fees; indeed, the meaning of commissions or percentage, as established by immemorial legal usage, is so wholly different from the meaning of the word fees, when used to designate compensation for legal services performed by an officer, that it is impossible to mistake the one as meaning that which is signified by the other. Prior to the passage of the act of March 31, 1876, the commissions paid by

the state were never treated as fees, and were never regarded as being anything different from commissions paid to other persons for servics of like character, as those paid to an executor or administrator, trustee, agent or attorney.

In the consideration of this question, we are not to overlook the fact that from 1811 to 1834 it was the unquestioned duty of the county treasurers to settle their accounts of moneys collected for the state with the auditor general or state treasurer, or with both acting as an auditing board. It was decided in the case of The Commonwealth v. Laub, 3 W. & S. 435, that by the forty-ninth section of the act of April 15, 1834, P. L. 546, the accounts of county treasurers of moneys received for the use of the commonwealth must be settled by county auditors, and not by the auditor general. It was stated, on the argument of this case, that the account of one county treasurer had been settled by the controller of Philadelphia, who by law exercises the powers and functions formerly possessed by county auditors. If The Commonwealth v. Laub was ever considered as a correct exposition of the law touching this question, it has been, so far as is known, disregarded by the legislature, and, as we have been informed, by the city controllers, county auditors and auditors general ever since, with the one exception to which we have referred.

In every act of assembly passed since the decision of this case, in which the duty of making collections for the state has been imposed on county treasurers, the settlements of the accounts for the moneys so received are directed to be made with the accounting officers of the commonwealth.

We think the true reading of the 49th section of the act of 1834 shows an intent to do no more than to give to the auditor general the power to refer the accounts of the county treasurer with the state treasury, and such other officers in the county receiving money for the use of the commonwealth, to the auditors of the county to audit, settle and adjust. The act does not seem to us to take from the commonwealth's accounting officer the right, or relieve him from the performance of the duty of settling the accounts of county treasurers, in relation to the moneys of the state in their hands. If the act of 1834 is still in force, the auditor general may, in the exercise of his discretion, call upon county auditors to audit, settle and adjust

the accounts of county treasurers and other county officers, but his superior jurisdiction and control over the same has not been taken from him by the act of 1834. We think that subsequent legislation makes this clearly to appear; the auditor general, alone or in conjunction with the state treasurer, is always required to settle the accounts of county officers with the state.

Simply by way of illustration, it may not be amiss to refer to the act of April 13, 1859, P. L. 607, which provides that whenever a county treasurer, after demand, fails to pay over the balance found to be due by him, upon settlement of his accounts by the auditor general and state treasurer, proceedings may be instituted by the attorney general for his dismissal from office.

In all this legislation, as was said upon the argument, " the state is asserting its sovereignty and insisting on the ultimate accountability of the treasurer to itself in matters of its own concernment."

And upon this the defendants rest their contention, that the city treasurer is, in fact and in law, as respects his duties, functions and relations to the state, a state officer, and is not, as to these duties, to be regarded as a county officer, in the sense of § 5 of article XIV. of the constitution. And as the act of March 31, 1876, was passed to carry § 5 into effect, it is not to be interpreted as applying to the city treasurer in his relations to the state, but only as applying to him in his relations to the county.

In the case of the Commonwealth v. Durkin, 109 Pa. 138, the dual position of the county treasurer is clearly enunciated. The court say that bond given to the city is given by the city treasurer as such; that it is an official bond given in his character as city treasurer; but that the duties imposed on him by the state, and for the state, are in no sense a part of his duties as treasurer of the city; that the city is no party to these duties, and is not concerned with regard to them. We think that this position, on which the defendants mainly rest their resistance to the claim of the city, is well taken, because the county treasurer cannot be regarded as an officer of the city or county when he does not act for the municipality nor under its control, and is not accountable to it. In Sheboygan Co. v. Parker, 3 Wall. 93, the Supreme Court of the United

VOL. CXXV—38

States, speaking by Mr. Justice GRIER, said: "An officer of the county is one by whom the county performs its usual political functions," and, inasmuch as the work done by the defendants for which the commissions in dispute were paid to them, was work done for the state, we conclude that they are, in respect to the same, to be regarded as state and not as county officers.

The conclusion reached upon this point in the case, requires us to hold that the act of 1876 has no bearing upon, or application to, the material question raised by the cases stated; the constitution and the act of 1876, each having general relation to county officers, the first declaring that the compensation of county officers shall be regulated by law, and the second, in its preamble, stating that it is to carry this purpose into effect that the act was passed.

The policy which has always been connected with the payment of commissions by the state to county treasurers, for services rendered to and on behalf of the state, has doubtless resulted largely to the benefit of the commonwealth, stimulating to effort and zeal in the collection of moneys due to the state. It would probably result in great loss if this course of dealing with county treasurers should be abandoned; it ought not to be swept away on any forced or doubtful construction of the law. If it was intended that salaries were to be substituted for compensation, in the form of commissions paid by the state to its collecting officers and agents, as we understand the law, this has not yet been done, and until such action is taken, the law as it stood at the time of the adoption of the constitution, which regulates the payment of such commissions, remains in full force and effect: Perot's App., 86 Pa. 335; Crawford Co. v. Nash, 99 Pa. 253.

If the conclusions to which we have been brought upon this point are correct, it would be a useless expenditure of time to consider the other important questions and considerations presented upon the argument by both the plaintiff and the defendants. If the act of 1876 is applicable only to county officers when acting for the local or municipal authority which they represent, and does not apply to such officer when performing duties to the state, under special requirement of the commonwealth, the act drops out of the cause, as having no proper

standing in it. This renders a critical examination of the various provisions of the act unnecessary, except to say of the material sections of the act, that the first section relates exclusively to fees in the technical meaning in which the word is used in acts of assembly, which prescribe the amounts which officers of the law are authorized to charge for specific legal services.

The ninth section is applicable only to registers of wills and prothonotaries or clerks of courts, for they only are authorized to collect the collateral inheritance tax, and taxes due the state on writs or legal proceedings or fees on such proceedings otherwise belonging to the state. The last portion of the section which says, all commissions on the collection of such taxes as are now or may hereafter be allowed by law shall be deemed and taken as part of the regular fees of the officer collecting the same, and shall be accounted for accordingly, in the connection in which it stands with that which preceded it, must be taken as restricted to taxes, which are collectible by registers of wills and prothonotaries; it is separated by a comma only from the words receipts, and when the words "such taxes" are used in completing the sentence, and not in a separate and independent sentence, it must be interpreted as taxes of the kind or character mentioned, described or referred to in the preceding portion of the section. It is not, in our judgment, to be understood as meaning commissions on all taxes then imposed, or which might thereafter be allowed by law, but is rather to be regarded as meaning the kind of taxes recited or described.

From what we have already said as to the application of the act to county treasurers, when acting for the county, as distinguished from duties performed as officers or agents of the state, it follows, that the fifteenth section, which substitutes a fixed salary for moneys, fees, perquisites or mileage, and which declares that they all shall belong to the county, is to be understood as meaning such moneys, fees, perquisites and mileage, which shall be received by county officers for the performance of duties or services, which under the law, they are authorized or required to perform when acting in their capacity as officials of the county or municipality, and that it does not include the compensation which the state is required

to pay to county treasurers as commissions for the collection of its revenues.

This is all that we decide in the cases before us. That the moneys, fees, etc., collected from the debtors of the common-wealth are to be paid to the state, and that all moneys, fees, etc., which are received by county officials when acting for the county are to be paid into the county treasury, is clear beyond dispute, under the act of March 31, 1876. But that the com-mission paid to county treasurers by the state, for services rendered to the state, is included by the general and compre-hensive language of the act, we reject, as not expressing the true intent and meaning of the statute upon which plaintiff relies to support the demand made against the defendants.

For the reasons stated, we enter judgment on the cases stated for the opinion of the court in favor of the defendants.

Judgments having been entered for the defendants in each case, the plaintiff took these writs, in each case assigning as error the entry of judgment for the defendant, and the refusal to enter judgment in favor of the plaintiff for the amount claimed. The writs were argued together in this court.

*Mr. Charles F. Warrick*, City Solicitor, (with him *Mr. Rob-ert Alexander*, Assistant City Solicitor), for the plaintiff in error:

Citing § 1, act of April 13, 1859, P. L. 607; § 5, article XIV. of the constitution; 6 Conv. Deb. 205–9; 8 Conv. Deb. 304–7, 322–4; § 13, act of April 15, 1834, P. L. 542; § 10, act of February 2, 1854, P. L. 28; §§ 12, 15, 16, act of March 31, 1876, P. L. 13, the counsel contended:

1. It was the intention of the framers of the constitution that every county officer in this commonwealth should receive a salary to be fixed by the legislature, which salary should be in full for all services and in lieu of all other compensation, with the restriction that in counties containing over 150,000 inhabi-tants the salary should not exceed the amount of fees earned during his term and collected by or for him.

2. By § 12, act of March 31, 1876, P. L. 13, the legislature, in pursuance of the constitutional provision, fixed the salary of the county treasurer, in counties containing over 150,000 inhab-

itants, at $10,000 per annum, and by § 15 of the same act declared that this salary should be in lieu " of all or any moneys, fees, perquisites or mileage," and all moneys, other than salary, received from " any source whatever " should belong to the county, and be paid into the county treasury.

3. Every service rendered by the defendants, severally, while in office, was rendered by each as a county officer called county treasurer, and in no other capacity whatsoever. For his three years service as county treasurer, defendant Martin received $47,952.32, or $17,952.32 more than the aggregate amount of his salary. Defendant Irvine, for his three years service received $50,479.03, or $20,479.03 more than the aggregate amount of his salary. These sums in excess of salary, the defendants have applied to their own use, in violation of the constitution and act aforesaid, and they are legally bound to pay the same into the county treasury.

*Mr. Joseph L. Caven* and *Mr. Furman Sheppard*, for the defendants in error:

1. Section 5, article XIV. of the constitution applies in terms to " county officers " only. If a county treasurer, in acting for the commonwealth, is only in that respect an agent or employee of the commonwealth, he is not an officer, and the section for that reason does not apply to him. But if he is an officer in respect of the moneys in controversy, he is a state officer and not a county officer. His duties as respects these moneys are to the state. His accounting is with the state. The moneys he handles are those of the state. His official relation is entirely with the state, and his compensation is received from the state.

2. The word " fees " is used three times in § 5, article XIV. of the constitution, to designate that which is to be paid into the county treasury. It is the only word used to designate the subject of payment. It is not connected with any words of a general character, such as emoluments, money, perquisites, compensation, commissions, etc., which might extend its meaning. Accordingly, § 1, act of March 31, 1876, P. L. 13, purports to deal only with the fees " limited and appointed by law to be received by each and every county officer," etc. The present actions are brought, not for fees, but for commissions eo nomine. The defendants paid their fees to the city.

·3. It is, therefore, under the authorities, a question of interpretation whether the act of March 31, 1876, in its general scope, treats the county treasurer as exercising a function and performing a duty with which he is charged by the commonwealth, solely and exclusively in its own behalf; or whether, on the other hand, it contemplates only the ordinary relations which he sustains to the municipality, and the services rendered to it as such. Moreover, by the condition of the official bond to the city, the city controller is authorized to determine, finally and conclusively, the amount of any default that may happen, enter judgment therefor, and issue execution, which shall not be opened or set aside at the instance of the obligor or his sureties. Why should the act of the city controller be less conclusive when he certifies as he has done here, that "there is. no default," and satisfaction is entered in reliance upon such certificate? Blackmore v. Allegheny Co., 51 Pa. 160; Northampton Co. v. Herman, 119 Pa. 373.

PER CURIAM:

The opinion of the learned judge below is so full and satisfactory, that we affirm the judgment in each of the above cases, for the reasons given by him.

Judgments affirmed.