# Philadelphia *v.* McMichael, Appellant.

208       297
s 25 SC ²430

*Municipalities—City treasurer—Commissions—Moneys of the state—County officers.*

Whatever duties the state chooses for its own advantage to impose upon county officers for the collection of its revenue, it cannot so blend such duties with those they owe to the county as to make these duties indistinguishable.

In counties having over 150,000 inhabitants the county treasurer is not entitled to commissions on the personal property tax, and the tax on municipal loans collected by him and paid into the state treasury. Philadelphia v. Martin, 125 Pa. 583, explained and distinguished.

MITCHELL, C. J., and THOMPSON, J., dissent.

Argued Jan. 12, 1904.   Appeal, No. 189, Jan. T., 1903, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T.. 1900, on case stated in suit of City of Philadelphia v. Clayton McMichael, City Treasurer.   Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and THOMPSON, JJ.   Affirmed.

Case stated to determine right of city treasurer to certain commissions.

SULZBERGER, P. J., filed the following opinion:

The defendant was city treasurer of Philadelphia for the term of three years beginning the first Monday of January, 1898.   By virtue of the Act of March 31, 1876, P. L., 13, he received a salary of $10,000 yearly.   In addition to this he received on settlements with the state at various times the following sums:

| | | |
|---|---|---|
| First.  Commissions on personal property tax. | $43,426 | 26 |
| Second.  Commissions on municipal loan tax. | 1,770 | 09 |
| Third.  Commissions on state licenses  .     . | 15,098 | 10 |
| Fourth.  Penalties connected with item No. 3. | 6,583 | 39 |
| Amounting together to .     .     .     . | $66,877 | 84 |

The city demands this sum from the defendant, who denies his liability on the ground that he was legally entitled to receive it for his own use.

The city's claim is based on the fifth section of the fourteenth article of the constitution of 1874 and the legisla-

tion in pursuance thereof. The section is in the following words:

" The compensation of county officers shall be regulated by law, and all county officers who are or may be salaried shall pay all fees which they may be authorized to receive, into the treasury of the county or state, as may be directed by law. In counties containing over one hundred and fifty thousand inhabitants all county officers shall be paid by salary. . . . "

The defendant denies the applicability of this constitutional rule on the ground that the services for which the commissions were received by him were not rendered in the performance of his duties as city or county treasurer, but in the performance of certain other duties as agent for the state.

This contention is based primarily on the opinion of Judge ALLISON in the case of Philadelphia v. Martin, 125 Pa. 583, which has been invoked by county officers claiming extra compensation, in every case brought since 1889, when it was decided.

On more than one occasion the Supreme Court has intimated that the scope of that decision was not as broad as the earnest litigants believed, and that its application was to be limited to the points which it really decided.

The facts were embodied in a case stated.

It was therein agreed, among other things, in substance:

(*a*) That it was Martin's duty, as treasurer, to collect and receive, and he did collect and receive, for the use of the commonwealth, all moneys for licenses from retailers of merchandise, hotels, liquor dealers, brewers, billiard saloons, vendors of patent medicines, brokers, auctioneers, restaurants, taverns, public amusements, theatres, peddlers, and all taxes on loans and on personal property.

(*b*) That the amount of money collected by Martin for the use of the commonwealth and paid over to it by him was: for 1880 the sum of $776,745.32, on which his commissions were $5,408.02; for 1881, the sum of $764,536.32, on which his commissions were $6,274.17; and for 1882, the sum of $932,067.98, on which his commissions were $6,270.13.

(*c*) That by virtue of an ordinance of the city of Philadelphia, duly passed, the city had entered satisfaction of record upon Martin's official bond and upon the judgment entered thereon.

And it was further stipulated in said case stated that—

(*d*) If the court shall be of opinion that the said three separate commissions should be paid by Martin to the city, then judgment for the plaintiff for $17,952.32.

From these items of the case stated it will be perceived that the commissions of each year were treated as one sum; that the several sources from which they were derived, though recited, were not differentiated or classified and that the license fees were placed at the head of the list, and all the rest treated as ejusdem generis. Either the parties were unconscious that the sources of the treasurer's commissions were not all of one quality, or their eyes were fixed on the single point of the right of the treasurer to receive anything beyond his salary.

When we remember that the constitution of 1874 and the act of 1876, passed in pursuance thereof, were supposed to have abolished the fee system in counties having more than 150,000 inhabitants, and that county treasurers had urgent motives for denying this result, the ease with which the dispute could be made to turn on the bald affirmation or denial of the principle becomes apparent.

In that state of mind it was incautiously assumed by all the parties that the test of service to the state was the payment of money by the treasurer into the state treasury. The fact that such payment might have been and actually was in certain instances a mere performance of his duty as city treasurer was simply overlooked.

An examination of the printed briefs in the case discloses the fact that the whole argument was directed exclusively to the one point of the treasurer's right to commissions for services to the state, and accordingly Judge ALLISON, in his opinion, treats this one question only, and though some of the statements made in the course of the opinion have been justly criticized, he leaves no doubt as to the scope of the decision.

(Page 596) : " This is all that we decide in the cases before us. That the moneys, fees, etc., collected from the debtors of the commonwealth are to be paid to the state, and that all moneys, fees, etc., which are received by county officials when acting for the county are to be paid into the county treasury, is clear beyond dispute, under the act of March 31, 1876. But that the commission paid to county treasurers by the state,

for services rendered to the state, is included by the general and comprehensive language of the act, we reject. . . . "

The affirmance by the Supreme Court did not go beyond this.

In Knisely v. Cotterel, 196 Pa. 614, Mr. Justice MITCHELL said:

" The state may appoint its own agents to collect its own tax, even though such agent be also for other purposes a municipal officer, and his duties as state agent will not necessarily blend or become part of his duties as a city officer. This was practically decided in Philadelphia v. Martin, 125 Pa. 583, where it was held that the compensation of the city treasurer of Philadelphia in the collection of the state license fees from vendors of merchandise, etc., was due to him as a separate agent of the state and was not required to be paid by him into the city treasury."

The remarks of Mr. Justice DEAN, in Schuylkill County v. Pepper, 182 Pa. 13, are equally significant:

" Some of his (Judge ALLISON'S) remarks, in discussing the issue, would tend to sustain the position of appellant here, but these were not necessary to a decision of the point before him, and were not intended to be adopted by this court. The judgment in that case rests solely on these reasons : That the officer acted by authority of an act of assembly as the agent or officer of the state, although not designated by law as a state official. The case was cited and relied on by the officers in all the cases which have come before us since ; it has never been recognized as an authority for any other issue than that raised by the particular facts of it."

And, again, in Pittsburg v. Anderson, 194 Pa. 172:

" City of Philadelphia v. Martin is again cited as sustaining the fee system, in spite of the constitution ; we again say, as we have said several times, that case is authority only for the point decided; where the state gives a special compensation for a special duty performed for the state, the compensation belongs to the officer, and not to the county. That is not this case. We never did and do not now, approve of all the language adopted by Judge ALLISON in vindication of his judgment in City of Philadelphia v. Martin."

It will be seen that the question of law, whether this or that

particular service rendered by the treasurer was in pursuance of his duty as a county officer or as a state agent was not raised, having been fixed as a fact by the admissions of the case stated.

The case before us is altogether different. We are called upon to decide whether any or all of the four items first above enumerated arose out of services to the state or to the county.

Our conclusions are :

First. That in the matter of personal property tax and municipal loan tax the defendant was performing his simple duty as city treasurer to pay into the state treasury the money which the city was bound so to pay.

This duty was cast upon the city and the treasurer not only by general legislation, but by the express language of the tenth section of the Consolidation act (Act of February 2, 1854, P. L. 21), which is as follows : ·

" . . . . It shall be the duty of the councils of the said city to provide, and said treasurer to pay, on or before the 25th day of July, 1856, and in each year thereafter into the treasury of the state, the amount of the state tax assessed within the limits of the said city, deducting all allowances made by law, and said treasurer elected as aforesaid, before he enters upon the office, give bond with sureties, to be approved by the judges of the court of common pleas in Philadelphia county, in such sum as they shall direct, conditioned for the safe-keeping of and accounting for all moneys received by him for the use of the state ; the said treasurer shall keep the public moneys in such place and manner as the city councils shall direct, and shall verify his cash account at least once every week, to the satisfaction of a standing committee of councils, and upon the affidavit of a majority of such committee of any default therein the said treasurer shall be suspended from office until the further action of councils, and the court of common pleas of Philadelphia county shall, upon said affidavit and cause shown, forthwith issue a writ of sequestration to the sheriff of the county against such defaulter for the amount of such default, to be levied of all his property, estate, and effects in favor of said city, which writ shall be a lien thereon from the issuing thereof, with a clause of attachment contained

therein, directing the sheriff to arrest the body of such defaulter to answer the said charge on the day certain, on which day the said court shall inquire of the premises and enter judgment thereon as may be just, or in their discretion award an issue to try the disputed facts, and if the said court upon such hearing shall be satisfied there is probable cause to believe that such treasurer has committed the crime of perjury, as mentioned in this section, it shall be their duty to commit him for trial at the next court of quarter sessions of said county."

In Commonwealth v. Philadelphia County, 157 Pa. 531, the question came before the Supreme Court. Bardsley, the then treasurer, having received the personal property tax for 1890 from the receiver of taxes, embezzled a large part thereof. The state sued the city, and the latter, relying on the authority of Philadelphia v. Martin, defended on the ground that the county treasurer had in that matter acted as the agent of the commonwealth.

The city was defeated. In delivering the opinion of the Supreme Court, Mr. Justice DEAN said (p. 542):

"As to the license and mercantile tax, he (the treasurer) acted solely for the state. By the express terms of the act, the taxes on personal property were transmitted through him to the state treasury."

Page 543:

"More than thirty years ago, after most careful consideration both by the court below and this court, of the whole question, in Commonwealth v. Schuylkill County, 36 Pa. 524, it was decided, under similar facts, the county treasurer was not the agent of the commonwealth, but of the county, until the tax was paid by him to the state treasurer."

Page 544:

"It was settled by that case that, as to taxes assessed against the county, the county treasurer, in receiving and paying them over to the state, is the agent of the county. Nothing relieves the county from liability to the state but actual payment to the state treasurer. The decision has been followed since without interruption, and must be considered the law, binding on all the courts of the commonwealth, until the legislature, by distinct enactment, establishes a new line

at which the duty of a county treasurer ends, and his power and responsibility as an officer of the commonwealth begins."

Page 547 :

"But the law is settled that Bardsley was the agent of the county, and therefore the responsibility of the county did not end until the money reached the state treasurer."

In this decision the court followed Philadelphia v. Martin in the only point which that case decided, namely, that the city treasurer was in some respects a county officer, and in others, a state agent.

The new question decided was that in the matter of the personal property tax the treasurer was acting merely as a county officer.

This did not affect any point of law decided in Philadelphia v. Martin. The question had not been raised. Indeed, it had been disposed of in the case stated by agreeing upon it as a fact impliedly admitted.

Should we be in error in this respect, then no other conclusion is possible than that on this point, and to this extent Philadelphia v. Martin must be regarded as overruled by the later cases.

2. That the defendant is clearly entitled to retain the commissions on licenses and the penalties connected therewith comprised in items three and four. As to them, he acted solely for the state.

These conclusions are not affected by the proviso to the 17th section of the Act of June 1, 1889, P. L. 420, on which the defendant relies. This very act was before the court in Commonwealth v. Philadelphia, supra, and was held not to change the status of the treasurer as the county's agent. Under that ruling it would be necessary in order to sustain the defendant's position, to hold that the act meant to increase the defendant's salary as county treasurer by allowing him to keep a part of the taxes raised by the county.

In the absence of plain words we may not impute such an intention to the legislature, and if such intent were clear, we should have to declare the proviso unconstitutional. In this we but follow the plain direction of the Supreme Court.

"The state may, by law, appoint any county officer its agent for the transaction of its business, and as such state officer or

agent he may be entitled to such services ; but for the fees for performance of any and every duty as a county officer, the fees must be paid into the county treasury: " Schuylkill County v. Pepper, 182 Pa. 13.

" The object of the constitution and the general act of 1876 was to strike down the fee system in all counties containing over one hundred and fifty thousand inhabitants. It is our intention to adhere to the controlling principle in those cases, and wherever possible, give effect to the constitutional mandate. We would fail in judicial duty if we did not do so : " Pittsburg v. Anderson, 194 Pa. 172.

If our conclusions be correct the scope of the Act of June 6, 1893, P. L. 340, is smaller than seems to have been believed. It abolishes the treasurer's fees for services to the state, which, as we have seen, do not comprise the collection either of the personal property tax or the municipal loan tax. The only effect of the statute is to deprive the treasurer of the commissions and penalties in the matter of the license tax, which would, of course, enure to the commonwealth and not to the city of Philadelphia.

We might therefore concede the earnest contention of the defendant that this act is unconstitutional without in anywise affecting our judgment, since in either event the result would be the same.

The defendant's term having expired before the passage of the act of 1901, that statute need not be considered.

And now, this 16th day of July, 1903, judgment is entered for the plaintiff and against the defendant on the case stated for the amount of the commissions on the personal property and municipal loan tax and interest in the sum of $49,836.50.

*Error assigned* was in entering judgment for plaintiff on case stated.

*A. T. Freedley,* for appellant.—When the state pays a county officer special compensation for special duties performed for the state in reference to its revenues from personal and municipal loan taxes, the compensation, after payment thereof by the state to the officer, belongs to the officer : Philadelphia v. Mar-

tin, 125 Pa. 583; Schuylkill Co. v. Com., 36 Pa. 524; Com. v. Philadelphia, 157 Pa. 531; Com. v. Hershey, 200 Pa. 306.

The right of county treasurers to compensation for services to the commonwealth on personal property and municipal loan taxes has not been changed by the Act of June 1, 1889, P. L. 426, as amended by the Act of June 8, 1891, P. L. 229; Kirkendall v. Luzerne Co., 11· Kulp, 65; Com. v. Phila., 157 Pa. 531.

The accounts between the commonwealth and the city for the years 1898, 1899, and 1900 have been approved and settled in accordance with the acts of assembly, and not appealed from.

*Joseph W. Catharine*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellee.

OPINION BY MR. JUSTICE DEAN, March 7, 1904:

The court below has demonstrated the correctness of its judgment by unquestionable authority and the soundest reasoning. Whatever duties the state chooses for its own advantage to impose upon county officers for the collection of its revenue, it cannot so blend such duties with those they owe to the county as to make these duties indistinguishable. Primarily, the officer's allegiance is owing to the county; the state may as a matter of convenience or economy use him for certain purposes of her own, but the question still is, is there a liability on the part of the county to the state to which the county through her officers must respond? If so, in so responding the officer acts for the county and in that respect he is a county officer. It is wholly immaterial that at the further end of the line the state receives the answer and either accepts, modifies or rejects it, the officer acts throughout as a county officer and comes clearly under the provisions of the 5th section of the 14th article of the constitution and of the act of 1876.

The case before us is only another instance of many like contentions of county officers. Had it not been for the mere inadvertence of the court below shared in by this court, in Phila. v. Martin, 125 Pa. 583, it is probable, that this attempt to give a strained interpretation to the constitution would not have been made. But that case cannot be carried beyond the point clearly decided although it may be so carried by lumping

the different sources of revenue in that case stated as one sum.
All through Judge ALLISON's opinion in that case his reason-
ing is based on the clearly defined thought, that the state may
" lay hold of the treasurer of counties and make them its own
officers," by imposing upon them clearly separate and distinct
duties from those of county treasurers and for the performance
of such separate and distinct duties may provide for their
special compensation.    And the state did in that case provide
a separate and distinct compensation which, it was held, the
county treasurer was authorized to receive but which was
wholly outside his salary as county treasurer.    This was the
whole scope of that decision.    It was affirmed by this court in
a per curiam opinion of less than three lines.

It is obvious that the opinion of the court below in that case,
its affirmance by this court as well as the argument of counsel,
had in view just one point, viz : whether the county treasurer
under the 5th section of article 14, could lawfully receive from
the state a separate and distinct compensation, for separate and
distinct duties imposed upon him by the state and performed for
the state.    While in nearly all the items on which the treas-
urer claimed commissions, such commissions were under the
opinion in the case referred to properly allowable, there crept
into the case a few items which were purely county fees and
which should have been paid into the county treasury.    As to
these items the court below in the case before us well says :

" From these items of the case stated it will be perceived
that the commissions of each year were treated as one sum;
that the several sources from which they were derived, though
recited, were not differentiated or classified and that the license
fees were placed at the head of the list, and all the rest treated
as ejusdem generis.    Either the parties were unconscious that
the sources of the treasurer's commissions were not all of one
quality, or their eyes were fixed on the single point of the right
of the treasurer to receive anything beyond his salary."

Phila. v. Martin, supra, has been cited again and again since it
was decided as authority for the proposition, that the state can,
practically, authorize such compensation to county treasurers
in addition to their salaries as it may deem just, or as the sup-
posed justice or equities of the particular case may seem to
warrant.    Not so, however,    The legislature has no power in

counties having over 150,000 inhabitants to give county fees any other direction than that which leads into the county treasury; has no power to say that part shall go into the county treasury and part into the pocket of the officer. All fees which they may be authorized to receive must go into the county treasury. We have in several cases pointed out, as has the court below, what Phila. v. Martin does and what it does not decide ; we hope this is the last time it will be urged upon our attention as holding that the fees of county officers can have any other destination than the county treasury.

While the court below rightly concedes that appellant is entitled to retain from the state commissions on licenses and penalties, because in the collection thereof he acted solely for the state, it nevertheless holds, that as to the personal property tax and municipal loans the county is entitled to the commissions and they must be paid into the county treasury. As to this the court says : " In the matter of the personal property tax and the municipal loan tax the defendant was performing his simple duty as city treasurer to pay into the state treasury the money which the city was bound to pay." We directly decided this point in Commonwealth v. Phila. County, 157 Pa. 531, and held that in collection and payment of the personal property tax the treasurer acted only as a county officer. In Knisely v. Cotterel, 196 Pa. 615, it was decided that " the state may appoint its own agent to collect its own tax even though such agent be also for other purposes a municipal officer and his duties as state agent will not necessarily blend or become part of his duties as a city officer."

Having therefore flatly decided that the treasurer performed his simple duty as a county officer in paying into the state treasury the personal property and municipal loan tax, we squarely face the constitutional mandate :

" The compensation of county officers shall be regulated by law, and all county officers who are or may be salaried shall pay all fees which they may be authorized to receive, into the treasury of the county or state, as may be directed by law. In counties containing over one hundred and fifty thousand inhabitants all county officers shall be paid by salary. . . ."

In no instance has this court permitted any equivocal or even doubtful construction of this plain provision, except in the one

case which escaped its notice in Phila. v. Martin, supra. It
is well known that at the date of the adoption of the constitu-
tion the aggregate of fees, in counties containing within their
boundaries large cities, was enormous ; the fees of a single term
of office were equivalent to a fortune. The purpose of the
fundamental law was to so reduce this extravagant and burden-
some compensation, that it would in some degree be measured
by the capacity, work and responsibility of the officer. It is
not without interest to note how persistent has been the effort
to narrow the interpretation of this section. In Pierie v. Phila.,
139 Pa. 573, on a claim by the recorder for fees in addition to
his salary, it was held that the law fixed the salary of the officer
at $12,000, which sum could not be exceeded on any pretense.
In Commonwealth v. Grier, 152 Pa. 176, it was argued that
the district attorney was to be paid partly in salary and partly
by fees ; this court held he must be paid wholly by salary. In
McCleary v. Allegheny County, 163 Pa. 578, the sheriff sought
to charge mileage and fees ; we held he must be confined to a
salary. The same ruling was made in Von Bonnhorst v. Al-
legheny County, and in McGunnegle v. Allegheny County, in
the same volume. In Commonwealth v. Mann, Same v. Shields,
and Same v. Latta, 168 Pa. 290, it was decided that the act of
1876 to carry into effect the 14th article of the fifth section
of the constitution was a substitute for all previous legislation
on that subject; that thereafter, all county officers in counties
having a population of over 150,000 must be paid by salaries
and that they could lawfully receive nothing more. In Schuyl-
kill Co. v. Pepper, 182 Pa. 13, the county treasurer claimed fees
on liquor licenses, because he had to divide the money realized
among the different townships in such proportions as they were
entitled thereto. This, the treasurer argued, was a township
duty and he was entitled to additional compensation. We said
no, he received the money as county treasurer and must pay
it over as county treasurer and his compensation was his salary
alone. In City of Pittsburg v. Anderson, 194 Pa. 172, it
was sought to rest the claim of the county treasurer for fees
in liquor licenses on Phila. v. Martin, supra. It was argued
that the state in turning over a share of the fees to the county,
turned over its own money in the nature of a gift to the county,
therefore, in receiving and paying out this money, the treasurer

acted as the mere agent of the state and was entitled to fees. We held his salary as county treasurer was all he could lawfully claim. And now we have the present appeal.

It will be noticed that, through most of the years that the act of 1876 carrying into effect the constitution has been in force, county officers have been dissatisfied with it, and have sought to narrow and restrict it, yet as was said by Judge THAYER in Pierie v. Phila., supra. " The prohibition of the receipt of fees for their own use and the regulation of their compensation by fixed salaries exclusively could hardly have been expressed in plainer language than that which is written in the constitution. It is impossible for any ingenuity to prevail against it."

The judgment of the court below is affirmed.

MR. CHIEF JUSTICE MITCHELL dissenting :

I would reverse this judgment for three reasons. The first, which is technical, is that the action is too late. The appellant's accounts with the state have been settled, the settlement has not been appealed from, and is not now open to question in any other way than that which the statute provides.

The second reason is also technical but insuperable. The city has shown no title to the money in the hands of the appellant. The tax was imposed by the state on the county, and it was held in Com. v. Philadelphia County, 157 Pa. 531, that the treasurer acts on behalf of the county until actual payment into the state treasury so that the county is liable for the loss by embezzlement of its treasurer before such payment. By such payment, however, the money becomes the money of the state. Neither that case nor any other has held that it continues to be the money of the county after the latter has once discharged itself of the tax by payment. Though under the law the state returns part of it to the county, yet it does so as a gratuity and on its own terms. It does not permit the county to retain its ultimate share from time to time on its collections, but requires the whole to be paid in full and then returns the county's share. The legislature might at any time repeal the allowance of this gratuity, without in any way affecting the status of the money up to and including its payment into the treasury. In settling therefore with the county treasurer

for his compensation after he has paid in the full amount, the state is making an allowance out of its own moneys, and it alone has any title to claim a repayment from him. If through illegal allowances to the treasurer the county receives less than its legal due, its only claim is against the state for a proper settlement.

But thirdly, waiving all technicalities, and on the broad ground of the substantial merits, the case is with the appellant. Notwithstanding the criticisms passed upon Philadelphia v. Martin, 125 Pa. 583, and the efforts to restrict its application, I am of opinion that it was rightly decided, that it should be followed, and that it rules this case. In Knisely v. Cotterel, 196 Pa. 614 (633), it was said, " There is no prohibition to the state to impose additional duties to itself on city officers virtute officii. The state may appoint its own agents to collect its own tax even though such agent be also for other purposes a municipal officer, and his duties as state agent will not necessarily blend, or become part of his duties as a city officer." This was what the state did in the present case, and the effort to reach a contrary conclusion, however desirable the result may be on grounds of public policy, does not appear to me to rest on sound construction of the statute or the constitution.

THOMPSON, J., concurs in dissent.