Commonwealth ex rel. Specter *v.* Martin, Appellant.

104

Argued May 2, 1967. Before BELL, C. J., MUSMAN-NO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward G. Bauer, Jr.,* City Solicitor, with him *Frank J. Pfizenmayer* and *Jerome R. Richter,* Assistant City Solicitors, *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Levy Anderson,* First Deputy City Solicitor, for appellant.

*Arlen Specter,* District Attorney, for appellee.

*Peter Hearn,* with him *Austin M. Lee,* for Citizens' Charter Committee, amicus curiae, under Rule 65.

OPINION BY MR. JUSTICE JONES, July 3, 1967:

The basic issue which this appeal presents, important in its consequence, is narrow in its scope: do the provisions of Article X, §10-107(5)[1] of the Philadel-

---

[1] Article X, §10-107(5) provides: "No officer or employee of the City except elected officers running for reelection, shall be a candidate for nomination or election to any public office unless he shall have first resigned from his then office or employment." The sanctions imposed on a violator of this charter provision are that he becomes "ineligible for one year for any office or position under the City." (Article X, §10-107(6)), liable for a misdemeanor, punishable by a fine of not more than $300 or by imprisonment for not more than 90 days, or both, (Article X, §10-109), and to "removal from office or immediate dismissal," (Article X, §10-109). "This requirement [under Article X, §10-107(5)] is imposed because an officer or employee who is a candidate for elective office is in a

phia Home Rule Charter[2] require that the District Attorney of Philadelphia, by reason of his candidacy for election as Mayor, resign?

A brief recital of the factual background of this appeal is essential. Arlen Specter was elected District Attorney of Philadelphia for a four year term, beginning the first Monday of January, 1966 and ending the first Monday of January, 1970.[3] While the incumbent district attorney and performing the duties and functions of that office, Specter, on March 7, 1967, became a candidate for the office of Mayor in an election to be held on November 7, 1967. Specter did not and has not resigned from the office of district attorney.

On March 11, 1967, the City Solicitor of Philadelphia wrote a letter to Edward J. Martin, Finance Director of the City, advising Martin that, when Specter became a candidate for Mayor, he was required under Article X, §10-107(5), of the charter to resign as district attorney and that "[Specter] remains in office

---

position to influence unduly and to intimidate employees under his supervision and because he may neglect his official duties in the interest of his candidacy": Annotation to Article X, §10-107 (5). "In addition, if a violator is an elective or appointive officer of the City, he is to be immediately dismissed from his position. . . ."; Annotation to Article X, §10-109.

[2] The Charter was adopted by the electorate on April 17, 1951. The enabling statute is the Act of April 21, 1949, P. L. 665, 53 P.S. §13101 et seq. The provisions of this Charter are not inferior in dignity or power to a statute: Commonwealth v. Cabell, 199 Pa. Superior Ct. 513, 522, 523, 185 A. 2d 611 (1962); Addison Case, 385 Pa. 48, 57, 122 A. 2d 272 (1956). See also: Constitution, Article XV, §1, ("Home Rule Amendment"), adopted November 7, 1922, and Article XIV, §8, ("City-County Consolidation Amendment"), adopted November 6, 1951.

[3] The General Assembly, by the Act of August 26, 1953, P. L. 1476, §3, 53 P.S. §13152, specifically fixed the term of office of the district attorney and, by the Act of August 9, 1955, P. L. 312, No. 123, §1, as amended, 16 P.S. §7706, fixed the "annual salary of the district attorney of Philadelphia."

illegally and [Martin] should not process any pay to [Specter] for any period subsequent to March 7, 1967." Martin complied with this directive of the city solicitor.

On March 23, 1967, Specter instituted an action of mandamus against Martin in the Court of Common Pleas No. 3 of Philadelphia County. Martin filed an answer to Specter's mandamus complaint and a motion for judgment on the pleadings.[4] After legal argument, Judge CHARLES A. WATERS held that Specter was entitled to exercise the duties of district attorney, directed Martin to pay Specter forthwith his salary and denied Martin's motion for judgment on the pleadings. From that judgment Martin has appealed.

Briefly, stated, Martin contends: (1) a district attorney under Article XIV, §1, of the Constitution of Pennsylvania was classified as a "county officer"; (2) under Article XIV §8(1) of the Constitution all "county offices" in Philadelphia were abolished and, under Article XIV, §8(7), all "county officers" became "officers of the city of Philadelphia"; (3) the district attorney is now an "officer of the City" and, as such, is subject to all the provisions of the charter, and, therefore, as a candidate for another public office, Specter cannot continue to occupy the office and perform the duties of district attorney since he was required to resign under Article X, §10-107(5) of the charter.

At the outset of our determination of this appeal we must decide the propriety of a mandamus action to determine this issue.[5] Mandamus lies to compel the performance of a ministerial as opposed to a discre-

---

[4] The parties stipulated that there were no material issues of fact and that argument should be held as on final hearing.

[5] All parties are in agreement that the instant controversy should be determined promptly without regard to procedural questions.

tionary duty. "The primary requisites of the action are that the plaintiff has a legal right to enforce which is specific, well defined and complete; that a corresponding positive duty rests upon the defendant; and that no other adequate, specific or appropriate remedy exists.": *Francis v. Corleto,* 204 Pa. Superior Ct. 280, 283, 203 A. 2d 520 (1964) ; *Garratt v. Philadelphia,* 387 Pa. 442, 448, 127 A. 2d 738 (1956).

This action of mandamus is by Specter who claims that, by reason of his office as the duly elected district attorney, he is entitled to receive the salary and compensation attached to such office.[6] The action is against Martin who, as Finance Director of Philadelphia, has the duty and authority to approve the payment of money out of the city treasury. (Charter, Article VI, §§6-100, 6-106). The defense interposed is that, by reason of his violation of Article X, §10-107(5), Specter has forfeited his right to the office (Article X, §10-109) and the right to the compensation attached to said office.

While the right to retain the office of district attorney underlies this litigation, quo warranto, normally the action to try title to public office,[7] would be unavailable under the peculiar factual circumstances presently involved. Quo warranto can be instituted to determine the title to public office only by the Attorney General, the District Attorney or a private individual who has a special interest as distinguished from the interest of the public generally: *Mayer v. Hemphill,* 411 Pa. 1, 6, 190 A. 2d 444 (1963) and cases

---

[6] The right to such salary and compensation attaches to the office itself: *Jones v. Dusman,* 246 Pa. 513, 515, 516, 92 A. 707 (1914) ; *Cooke v. Roberts,* 335 Pa. 561, 562, 7 A. 2d 357 (1939) ; *Zawada v. Pa. System Bd. of Adjustment,* 392 Pa. 207, 218, 140 A. 2d 335 (1958).

[7] *Mayer v. Hemphill,* 411 Pa. 1, 6, 190 A. 2d 444 (1963) ; *Philadelphia v. Sacks,* 418 Pa. 193, 196, 210 A. 2d 279 (1965).

therein cited. Obviously, no individual has a special, as distinguished from the public, interest in this controversy. The Attorney General, in writing, prior to any litigation, had given an opinion to Specter regarding his status and thus had committed himself and Specter, as district attorney, would literally have had to sue himself. Under such unusual and extraordinary circumstances, quo warranto could not be resorted to in order to determine this matter. Moreover, in *Mayer v. Hemphill,* supra, the majority of this Court refused to pass upon the propriety of an action in equity to determine the existence of a violation of Article X, §10-107(5) of the charter although, because of what it termed "extraordinary circumstances", it did determine the merits of the litigation.

The employment of mandamus as a remedy in this type of situation has received sanction. When we examine the position of Martin the availability of mandamus becomes evident. Martin is under a duty to approve the payment of compensation to the district attorney, such duty being a ministerial duty. However, under the legal advice given Martin upon which he acted, Martin takes the position he does not have to perform his ministerial duty because, under a legal interpretation of the charter, Specter has forfeited his right to the office. In *Meadville Area School District v. Dept. of Public Instruction,* 398 Pa. 496, 501, 159 A. 2d 482 (1960), this Court recently said: "When public officials act in an improper manner because of an erroneous interpretation of the law under which they are functioning . . . mandamus will issue." See also: *Garratt v. Philadelphia,* 387 Pa. 442, 448, 127 A. 2d 738 (1956). In *Cain v. Stucker,* 159 Pa. Superior Ct. 466, 48 A. 2d 162 (1946), it was held that, where in an action to recover unpaid salary, plaintiff was obliged to establish that a decedent held title to his position as a policeman until his death, mandamus was the ap-

propriate action (pp. 469, 470). See also: *Alberts v. Garofalo,* 393 Pa. 212, 214, 142 A. 2d 280 (1958); *Commonwealth ex rel. Shoemaker v. Thomas,* 328 Pa. 19, 23, 24, 195 A. 103 (1937); *Commonwealth ex rel. v. Woodward,* 95 Pa. Superior Ct. 423 (1929); *Francis v. Corleto,* 204 Pa. Superior Ct. 280, 283, 287-288, 203 A. 2d 520 (1964).

Under the unusual circumstances herein existing, we conclude that mandamus furnishes an appropriate medium for the solution of the instant controversy.

Article XIV, §1, of our Constitution designates *eo nomine* as "county officers" twelve officers; within such designation district attorneys are included. By reason of such designation, a district attorney became a "constitutional officer", i.e., the incumbent of an office expressly recognized in the Constitution: *McGinley v. Scott,* 401 Pa. 310, 323, 164 A. 2d 424 (1960); *Dauphin County Grand Jury Investigation Proceedings (No. 3),* 332 Pa. 358, 362, 363, 2 A. 2d 809 (1938).

Such constitutional classification of these twelve officers as "county officers" accorded recognition of their status as "public officers" and to the geographical areas within which they were to be elected and to perform their official functions and duties.[8]

In 1951, Article XIV of the Constitution was amended by the addition thereto of §8(1). The aim and purpose of that amendment was the integration and consolidation in Philadelphia—where the city and county geographical areas are identical—of county and city offices. By virtue of that amendment, the first portion of which was self-executing, "all county officers" became "city officers". That constituted what former Chief Justice STERN, in *Lennox v. Clark,* 372 Pa. 355, 370, 93 A. 2d 834 (1953), aptly termed the first phase of the *"inter* city-county consolidation."

---

[8] Article XIV, §§2, 3 and 4 support this view.

By reason of such amendment, "the county offices [became] a part of the municipal government and . . . all their officers and employes [became] city officers and employes and as such bound by the provisions of the Charter concerning such officers and employes.": *Lennox*, supra, p. 370. However, by reason of a later provision contained in §8(1), the *"activities* or *functions* [of the county officers were] not changed; they will operate just the same as before and continue to perform their present duties until the next stage of the project is entered upon, which is to accomplish what may be termed the *intra* city consolidation, that is, the reorganization or 'streamlining' of the municipal governmental structure, now enlarged by the acquisition of the former county offices. Since clause (7) of the City-County Consolidation Amendment provides that the county officers are to continue, now as city officers, to perform their duties 'until the General Assembly shall otherwise provide', it would seem that any proposed reorganizations, regroupings, abolitions or mergers, of the former county offices, designed the more advantageously to incorporate their functions into the existing municipal structure, must wait upon action by the General Assembly": *Lennox*, supra, p. 370. See also: *Commonwealth ex rel. Truscott v. Philadelphia*, 380 Pa. 367, 375, 376, 111 A. 2d 136 (1955); *Commonwealth ex rel. Dilworth v. Pastorius, 5th*, 86 Pa. D. & C. 1, 8 (1953).

In *Lennox*, supra, our Court was called upon to determine the *post consolidation* status of the Prothonotary of the Courts of Common Pleas and the Register of Wills of Philadelphia, both of whom were designated as "county officers" under Article XIV, §1 of the Constitution. As to the prothonotary, in view of the fact that Article V, §7 of the Constitution specifically provided for the office of prothonotary in Philadelphia, his manner of appointment and his au-

thority to appoint assistants, such constitutional status led our Court to conclude that the prothonotary, even though constitutionally designated as a "county officer", did not fall within the City-County Consolidation Amendment and was not converted thereby into a "city officer". As to the register of wills, also the subject of a special provision in Article V, §22 of the Constitution, the Court concluded that the register of wills was not, by the amendment, converted into a "city officer" and did not become subject to the charter.

The significance of the ruling in *Lennox* insofar as the instant appeal is concerned is that, even though the prothonotary and register of wills were constitutionally classified as "county officers", this Court, considering not only the additional references to the prothonotary and register of wills in the Constitution but also their functions and duties and the nexus between such officers and the judiciary, held that such officers, *despite their constitutional classification as "county officers"*, were not converted into "city officers" subject to the Charter. Other than in Article XIV, §1, the office of district attorney was not specifically mentioned in the Constitution and, therefore, in that respect *Lennox* is distinguishable. However, *Lennox* (supra, p. 372) laid great stress on the fact that the office of prothonotary was an arm of the judiciary and the register of wills was a quasi-judicial officer and that functions of both offices were not within the scope of municipal government and municipal affairs.

Logically, the office of district attorney is of such nature that it should not fall within the scope and impact of the "City-County Consolidation Amendment". The affairs and functions of municipal government are foreign to the functions of a district attorney whose duties are performed not on behalf of the City but on behalf of the Commonwealth. That the district attor-

ney is elected by the voters of the City, that in the performance of his duties he is confined to the geographical area of the city and that he is paid from city funds do not make him a "city officer" since his duties and functions are not concerned with city affairs. The mere fact of constitutional classification of district attorney as a "county officer" *per se* should not be controlling any more than it was in *Lennox*. It is clear that when the framers of Article XIV, §1 referred to district attorneys as "county officers" they did so in description of the geographical area in which they were to perform their functions as opposed to those officers whose functions are performed on a statewide basis. District attorneys do not perform their duties on behalf of either a county or city; representation of counties in county affairs is by a county solicitor and representation of the City of Philadelphia is by the City Solicitor and its Law Department.[9]

Actually, the District Attorney of Philadelphia does not perform any municipal functions and his duties involve only his representation of the Commonwealth. The fact that *some* city officers may perform *some* duties on behalf of the Commonwealth and still be classified as city officers does not affect the status of the district attorney; *all* of the duties of the district attorney are performed on behalf of the Commonwealth.

In the performance of his duties, the district attorney acts in a quasi-judicial capacity. In *Common-*

---

[9] The wide breadth of representation of the City of Philadelphia by the City Solicitor and the Law Department is set forth in Chapter IV, §4-400 of the Charter. "This section is not intended to transfer to the Law Department the traditional prosecuting powers of the office of the district attorney, but it does empower the Law Department, short of exercising such powers, to act in the law enforcement field": Annotation to §4-400. See: *Commonwealth v. Reis Enterprises, Inc.*, 31 Pa. D. & C. 2d 402 (1963).

*wealth ex rel. Davis v. Reid,* 338 Pa. 351, 352, 12 A.
2d 909 (1940), this Court stated: "The duties of the
District Attorney in such a proceeding as is here in-
volved [mandamus proceeding] are judicial. . . ." (p.
352). Moreover, time and again, this Court has stated
that the district attorney is a quasi-judicial officer:
*Commonwealth v. Nicely,* 130 Pa. 261, 270, 18 A. 737
(1889); *Snyder's Case,* 301 Pa. 276, 288, 152 A. 33
(1930); *Commonwealth v. Cicere,* 282 Pa. 492, 495, 128
A. 446 (1925); *Commonwealth v. Kettering,* 180 Pa.
Superior Ct. 247, 254, 119 A. 2d 580 (1956). Like the
Prothonotary, and the Register of Wills, the office of
District Attorney is part and parcel of the judicial
system and performs an important function in the ad-
ministration of justice. Moreover, in the performance
of his duties, the law grants to the district attorney
wide discretion in the exercise of which he acts in a
judicial capacity. See: *103 University of Pennsylva-
nia Law Review, p. 1057 et seq.*

In *Commonwealth ex rel. Specter v. Freed,* 424 Pa.
508, 517, 228 A. 2d 382 (1967) we said: "Further
support for the conclusion that the designation of an
official as a 'county officer' in Article XIV, §1 of the
Constitution does not, by virtue of Article XIV, §8
make him subject to the Charter in all respects, is pro-
vided by the decision of our Court in Lennox v. Clark,
372 Pa. 355, 93 A. 2d 834 (1953). There we held that
despite the designation of the prothonotary and regis-
ter of wills as 'county officers' in Article XIV, §1, the
adoption of Article XIV, §8 did not convert them into
city officers for purposes of making their employees
subject to the civil service provisions of the Charter.
While this conclusion was based on a reason somewhat
distinguishable from the instant case, Lennox does
indicate that this Court has on a previous occasion
eschewed a literal and insensitive interpretation of the
designation 'county officer' in Article XIV of the Con-

stitution. Moreover, the decision in Lennox is particularly pertinent since we there held that what at first seemed to be the alteration in the character of the offices of prothonotary and register of wills by constitutional language adopted in 1951 had not in fact occurred in light of a careful consideration of the language of Article V, adopted in 1874". In *Freed,* three members of this Court concluded that the District Attorney of Philadelphia was not a "city officer" and not subject to the Charter provisions. With that conclusion we agree.

A reading of the constitutional designation of "county officers" in the light of *Lennox,* an examination of the functions of the district attorney which are completely divorced from the municipal functions of the city government, a recognition of the nexus between the duties of the district attorney and the judiciary and the fact that the district attorney acts in a quasi-judicial capacity and a construction of Article XIV, §1 in the light of what we believe to have been the intent of the framers of the Constitution led to the conclusion that the District Attorney of Philadelphia did not become subject to the charter by reason of Article XIV, §§8(1) and 8(7).

Even if we assume that Article XIV, §1, of the Constitution which designated a district attorney as a "county officer" is controlling and that, under Article XIV, §8, the District Attorney of Philadelphia has now become a "city officer" subject to the charter provisions, Article X, §§10-107(5) and 10-109 cannot be applied constitutionally to the District Attorney of Philadelphia. In pertinent part, Article VI, §7 of the Constitution (adopted May 17, 1966) provides: "All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. . . . All civil officers

elected by the people, [with certain exceptions not presently relative], shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate." As an *elected* constitutional officer, under Article VI, §7, a district attorney may be removed from office in only two ways: (1) upon conviction of misbehavior in office or any infamous crime or (2) by the Governor, for reasonable cause after impeachment by two-thirds of the Senate.

Illustrative of the removal method contemplated in the first sentence of Article VI, §7, supra, is the Act, of March 31, 1860, P. L. 382, §§17 and 18, 16 P.S. §§7711, 7712.[10] Section 17 of that statute provides that a district attorney, who wilfully and corruptly demands, takes or receives a fee or reward other than prescribed by law for his official duties or who is wilfully and grossly negligent in the execution of the duties of his office, may be found guilty of a misdemeanor in office; upon conviction thereof, he becomes subject to payment of a fine not exceeding $1,000 and imprisonment not exceeding one year and "his said office shall be declared vacant." Section 18 of the same statute provides that a district attorney, who is charged with any crime or with wilful and gross negligence in the execution of his official duties, shall be supplanted by the court and a competent attorney shall be appointed to prepare an indictment against and to prosecute the district attorney; if the district attorney is convicted of any crime for which he may be sentenced to imprisonment by separate or solitary confinement at labor, then "his said office shall be declared vacant by the court passing such sentence."

Under the third sentence of Article VI, §7, an elected official, such as a district attorney, can be re-

---

10 The provisions of this statute are not affected by the Constitution: *Commonwealth v. McHale*, 97 Pa. 397 (1881).

moved only by the Governor: (a) for reasonable cause and (b) even then, only after a hearing and impeachment by a vote of two-thirds of the Senate.

It is basic and fundamental in our jurisprudence that a constitutional direction as to how a thing is to be done is exclusive and prohibitory of any other method which the legislature may deem better or more convenient. In *Bowman's Case,* 225 Pa. 364, 367, 368, 74 A. 203 (1909) this Court said: "The condition upon which all officers shall hold their offices, whether conferred by appointment or secured by election, is good behavior. Removal is the penalty for misbehavior. This is the substance and meaning of the first sentence of the fourth section [of the former Article VI]. All officers are either appointed or elected, and the second sentence of the section provides that those appointed, other than judges of the courts of record and the superintendent of public instruction, may be removed at the pleasure of the appointing power. This sentence is not involved in the determination of the question before us, but the last is, for it declares that all officers elected by the people, not within the exceptions, 'shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.' Here is a distinct constitutional expression, and there can be no debate as to the validity of any legislation repugnant to it: Commonwealth v. Moir, 199 Pa. 534. Whether the words, 'all officers elected by the people,' include officers elected to fill purely statutory offices created by the legislature and by it to be abolished at will is not a question now calling for a decision from us. What we are to decide is whether a constitutional officer, whose office the legislature did not create, and which it cannot abolish, may be removed in any other way than that pointed out in the constitution for the removal of officers elected by the people. Clearly there is but

one answer to this. A constitutional direction as to how a thing is to be done is exclusive and prohibitory of any other mode which the legislature may deem better or more convenient. As the people have spoken directly in adopting their organic law, their representatives in general assembly met are at all times bound in undertaking to act for them, and what is forbidden, either expressly or by necessary implication, in the constitution cannot become a law." See also: *Commonwealth of Pennsylvania v. Reid,* 265 Pa. 328, 333, 334, 108 A. 829 (1919); *Commonwealth ex rel. Attorney General v. Benn,* 284 Pa. 421, 428, 131 A. 253 (1925); *Snyder's Case,* 301 Pa. 276, 288, 152 A. 33 (1930); *McGinley v. Scott,* 401 Pa. 310, 323, 164 A. 2d 424 (1960); *Commonwealth ex rel. Smillie v. McElwee,* 327 Pa. 148, 159, 193 A. 628 (1937); *Dauphin County Grand Jury Investigation Proceedings (No. 3),* 332 Pa. 358, 373, 2 A. 2d 809 (1938).

A district attorney, as well as all other public officers, may be removed under Article VI, §7, upon a conviction " 'of misbehavior in office or of any infamous crime' by a sentence of a court and it is not necessary in such instances to resort to the impeachment or the Senatorial address process prescribed by the Constitution." *Commonwealth v. Knox,* 172 Pa. Superior Ct. 510, 523, 94 A. 2d 128 (1953). Martin argues that, if Specter refuses to resign as district attorney and continues as a candidate for Mayor, "then . . . he would be guilty of misbehavior in office" and subject to removal under Article VI, §7. The answer to that is two-fold: (a) the statutory law as to malfeasance or misfeasance of a district attorney in a first class county (Act of 1860, supra) does not encompass a violation of Article X, §10-107(5) of the charter and, aside from such statutory law, Specter's refusal to resign as district attorney would not under our case law constitute "misbehavior in office". See: *Com-*

*monwealth ex rel. Duff v. Keenan,* 347 Pa. 574, 583, 584 (footnote 4), 33 A. 2d 244 (1943); *Commonwealth v. Green,* 205 Pa. Superior Ct. 539, 546, 211 A. 2d 5 (1965); *Commonwealth v. Evans,* 190 Pa. Superior Ct. 179, 225, 154 A. 2d 57 (1959); *Commonwealth v. Knox,* supra, 522, 523; (b) even if a violation of Article X, §10-107(5) be considered "misbehavior in office" or an "infamous crime", the Constitution provides for removal of the elected officer *only upon conviction thereof* whereas Article X, §10-109 provides for removal from office without any requirement of a conviction. If dependence is placed by Martin upon the first sentence of Article VI, §7 of the Constitution as grounds to remove Specter such dependence is unsupported factually or legally. Article X, §10-109 clearly offends the Constitution if it contemplates removal from office for "misbehavior in office" since it provides for removal without the necessity of a conviction.

Although Martin concedes that this "Court's decision in Com. ex rel. Truscott v. Philadelphia, 380 Pa. 367 [111 A. 2d 136] (1955), would suggest that, in the absence of action by the General Assembly giving the City control over the District Attorney's office, his removal would be governed by Article VI, §7 of the Constitution",[11] he contends that this Court need not reach the removal procedures. Such contention completely ignores the clear, unambiguous and unequivocal language of Article X, §§10-107(5) and 10-109 of the charter. The former section mandates that an officer of the city who becomes a candidate for another public office "shall have *first*[12] resigned" from his office. Section 10-107(5) must be strictly construed and this Court has construed the phrase "shall be a candidate for nomination or election" to mean "filing nomination

---

[11] Appellant's Supplemental Brief, p. 2.

[12] Emphasis supplied.

papers or publicly announcing one's candidacy for such office" *(Mayer v. Hemphill,* 411 Pa. 1, 14-16, 190 A. 2d 444 (1963). Admittedly Specter, on March 7, 1967, became a candidate for Mayor under *Mayer* without *first* resigning as district attorney and, if §10-107(5) is applicable to him, then he has clearly violated its mandate. *Immediately* upon such violation Specter became liable for the penalties prescribed in Article X, §§10-107(5) and 10-109, one of which penalties—unrelated under the language of the charter—was removal from his office. The removal procedures provided by the statute must be met by this Court because, if §10-107(5) is applicable to Specter, his removal would inexorably follow.

According to the charter provision the status of a statute, we must presume that it was not intended to violate the provisions of our Constitution. If the district attorney is subject to §10-107(5), then upon a violation thereof he becomes liable to removal from his office by a method offensive to the constitutionally ordained *exclusive* methods of removal of a constitutional officer. Removal from office under Article X, §10-109 for a violation of §10-107(5)—automatic in nature and without opportunity for a hearing—provides a new and novel method of removal clearly violative of the provisions of Article VI, §7 of our Constitution. If such Charter provisions are applicable to the District Attorney of Philadelphia, they are constitutionally invalid. We conclude that the framers of this Charter did not contemplate the application of these charter provisions to the office of district attorney, an application which would clearly violate our Constitution.

In summary, we conclude: (1) that the District Attorney of Philadelphia is not an officer of the City of Philadelphia so as to subject him to the provisions of Article X, §10-107(5) of the Charter; (2) that, if

Article X, §§10-107(5) and 10-109 are applicable to the District Attorney, the removal provisions of Article X, §10-109 clearly offend Article VI, §7 of the Constitution.

Judgment affirmed.

Mr. Justice O'BRIEN and Mr. Justice ROBERTS join in this opinion. Mr. Justice EAGEN, for the reasons expressed in his opinion, would affirm the judgment of the court below.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE EAGEN:

The prime issue before the court below in this action of mandamus was whether or not Arlen Specter, the District Attorney of Philadelphia, was and is entitled to receive the salary of that office as fixed by the legislature of the Commonwealth. Of course, it is the de jure holder of that office who is entitled to the emoluments thereof, and whether or not Specter was such had to be resolved as a threshold question. Admittedly, on November 2, 1965, he was elected to the office for a term of four years and continues to hold the office under that mandate. Assuming arguendo, that he is subject to the provisions of the Philadelphia Home Rule Charter and has violated §10-107(5) thereof, I still cannot see how the finance director of the city has the power or authority to declare Specter has forfeited title to the office and is not still the de jure holder thereof.[1]  Absent such au-

---

[1] Section 9-100 of the charter does provide that any person holding an elective office of the city shall be subject to removal at a recall election but nothing in this section or any other section called to my attention gives any officer of the city the power to declare a forfeiture.

thority, any attempt to so declare would have no legal effect. Hence, Specter is still the de jure district attorney of Philadelphia and is entitled to the relief he sought in this action, namely, payment of the salary incident to the office. Therefore, regardless of all other considerations, the action of the lower court in this respect should be affirmed.

In view of the above, the question of Specter's removal from office is not before us, although I am inclined to agree with my Brother Jones that a district attorney can only be removed from office as the Constitution prescribes.

Hence, whether or not Specter, as District Attorney of Philadelphia, is subject to the provisions of the Philadelphia Home Rule Charter and particularly §10-107(5) is a distinct and separate question.[2] While I have definite reservations as to the correctness of raising this question in this mandamus action, or the propriety of the court below or this Court in reaching it, I can still understand why, under the circumstances, it has been deemed necessary of resolution.

It is my personal conclusion that Specter, as District Attorney of Philadelphia, is within and subject to the provisions of the Philadelphia Home Rule Charter, particularly §10-107(5). This does not mean that any municipal authority may interfere with, curtail or enlarge upon the functions or powers of the office, for this is solely within the prerogative of the legislature. As I pointed out in my concurring opinion in *Commonwealth ex rel. Specter v. Freed*, 424 Pa. 508, 521-522, 228 A. 2d 382, 387 (1967), the powers and functions of the office have been defined by proper legislative enactment, and under the Act of April 21, 1949, P. L. 665, §18(b), 53 P.S. §13133(b), pursuant to which

---

[2] The potential unconstitutionality of any recall or removal provisions would not affect the validity of the pertinent provisions ruling this question.

the Philadelphia Home Rule Charter was adopted, the city is specifically precluded from limiting or enlarging upon these powers or functions. However, §10-107(5) has nothing to do with the powers or functions of the office. It affects only Specter's conduct outside and beyond his official functions.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Quo warranto is the proper remedy in this case and Specter's opponent has a standing to bring such a suit, even if the Attorney General of Pennsylvania or any other appropriate Public authority will not. In *Mayer v. Hemphill*, 411 Pa. 1, 190 A. 2d 444, the Court said (page 6): "The *general rule* is well settled that quo warranto is the sole and exclusive remedy to try title or right to office, whether the right which is challenged is that of a de jure or a de facto officer. It is likewise part of the general rule that quo warranto can be brought only by an Attorney General, or by a District Attorney, *or by a person who has a special right or interest\* as distinguished from the right or interest of the public generally, or has been specially damaged.\*\** Brinton v. Kerr, 320 Pa. 62, 63-64, 181 A. 569; Commonwealth ex rel. Schermer v. Franek, 311 Pa. 341, 166 A. 878; Commonwealth ex rel. District Attorney v. Gibson, 316 Pa. 429, 175 A. 389; Williams's Appeal, 312 Pa. 477, 167 A. 587; Commonwealth ex rel. v. Conroy, 267 Pa. 518, 110 A. 166; Eddy v. Ashley Borough, 281 Pa. 4, 125 A. 308; Dorris v. Lloyd (No. 2), 375 Pa. 481, 100 A. 2d 599; Commonwealth ex rel. McLaughlin v. Cluley, 56 Pa. 270; Commonwealth ex rel. Butterfield v. McCarter, 98 Pa. 607; Commonwealth ex rel. Gast v. Pfromm, 255 Pa. 485, 100 A. 276. Cf.

---

\* Such as his opponent in the general election, James H. J. Tate.

\*\* Italics throughout, ours.

also Dorris v. Lloyd (No. 1), 375 Pa. 474, 100 A. 2d 924." Accord: *Hughes v. 11th Ward Republican Club,* 389 Pa. 103, 132 A. 2d 681.

This was an action of mandamus to compel the Finance Director of Philadelphia to approve the payment of Specter's salary as District Attorney, after he had announced his candidacy for Mayor of Philadelphia and failed to resign. This case is moot because all parties agreed (and so stated at their oral argument before this Court) that Specter had been paid and is receiving his salary. However, the issue of whether Specter is compelled by the Constitution or by the Philadelphia Home Rule Charter to resign is of such tremendous public importance that I agree with the rest of the Court and with the request of all parties concerned that this important issue should be decided forthwith by this Court. I shall therefore assume, arguendo, that mandamus is an appropriate action and will presently lie.

I regret to say that the Majority have ignored the language and the spirit of Philadelphia's Home Rule Charter; and far worse, *they have ignored the clear and mandatory language of the Constitution of Pennsylvania.*

### The Constitution Makes Specter a City Officer

*The Constitution of Pennsylvania,* in language which is crystal clear, states that District Attorneys are *County—not State*—officers, and in Philadelphia are now *City—not State*—officers, and no wishful thinking nor any procrustean stretch can alter or change or nullify this clear language.

The Constitution of Pennsylvania of 1874 provided in Article XIV: "Section 1. *County officers shall consist of* sheriffs, coroners, prothonotaries, registers of wills, recorders of deeds, commissioners, treasurers,

surveyors, auditors or controllers, clerks of the courts, *district attorneys* and such others as may from time to time be established by law; . . ."

Pursuant to the enabling Act of April 21, 1949, P. L. 665, the people of Philadelphia adopted on April 17, 1951, a Home Rule Charter, effective January 7, 1952. In the meantime, the *people of Pennsylvania adopted* on November 6, 1951—effective immediately upon its adoption—*an amendment to Article XIV of the Constitution by adding thereto Section 8,* which pertinently provides: "§8. City and county of Philadelphia; consolidation of governmental functions; county officers abolished.

"(1) In Philadelphia all county offices are hereby abolished, and the city shall henceforth perform all functions of county government within its area through officers selected in such manner as may be provided by law.

. . .

"(3) All laws applicable to the county of Philadelphia shall apply to the city of Philadelphia.

. . .

"(7) Upon adoption of this amendment *all county officers shall become officers of the City of Philadelphia,* and, until the General Assembly shall otherwise provide, shall continue to perform their duties and be elected, appointed, compensated and organized* in such manner as may be provided by the provisions of this Constitution and the laws of the Commonwealth in effect at the time this amendment becomes effective, . . ."

This Constitutional amendment in the clearest imaginable language specifically provided that "upon adoption of this amendment *all county officers shall become officers of the City of Philadelphia.*"

---

* It will be noted that no mention is made of their removal.

No superficial or farfetched reasoning can evade or circumvent or alter the aforesaid crystal clear and mandatory language of the Constitution, or (as we shall see) the prior decisions of this Court which accurately construed and reaffirmed the clear language of the Constitution.

### The Philadelphia Home Rule Charter Governs Specter and Requires Him To Resign

The Philadelphia Home Rule Charter provides in §10-107(5): *"No officer* or employee *of the City,* except elected officers running for re-election, shall be a candidate for nomination or election to any public office unless he shall have first resigned from his then office or employment."*

· · The reason for this provision in re resignation is obvious. Such an officer would be in a position to unduly influence and to intimidate employees under his supervision, and might often neglect his official duties in the interest of his candidacy. If Specter is a City officer he must, without the slightest doubt, resign from his office of District Attorney.

The leading case interpreting the Constitutional Amendment and the Philadelphia Home Rule Charter as to who came within its provisions is *Lennox v. Clark,* 372 Pa. 355, 93 A. 2d 834. In that case, the Court held that neither the Prothonotary nor the Register of Wills came within the Philadelphia Home Rule Charter for each of two reasons: First, the Prothonotary came within the *specific provisions* of Article V, §7 of the Constitution and the Register of Wills came within the *specific provisions* of Article V, §22 of the Constitution, and if there be any confusion overlapping

---

* Violation of this and other sections or provisions subjected such officer to stringent penalties and likewise provided he should be ineligible for one year for any office or position under the City.

or conflict between a special and a general provision of the Constitution (or of an Act or of a written instrument), the special or specific Constitutional provision prevails. *Waits' Estate,* 336 Pa. 151, 154, 7 A. 2d 329; *Philadelphia v. Commonwealth,* 270 Pa. 353, 358, 113 A. 661; *Buckley v. Holmes,* 259 Pa. 176, 188, 102 A. 497; *Commonwealth v. Kline,* 294 Pa. 562, 567, 144 A. 750; Endlich, Interpretation of Statutes, §216.

The second reason was that both the Prothonotary and the Register of Wills are part and parcel of the Judiciary and for this additional reason were not intended to come and did not fall within the *general* Articles of the Constitution as distinguished from the Judiciary Article. The Court in *Lennox v. Clark,* 372 Pa., supra, pertinently said (page 366): "Its real and designed result was that, when the former county officers became city officers and the former county employes city employes, they automatically became subject thereby to the laws then in effect governing and regulating city officers and employes, and also, of course, to any such laws as might thereafter become effective: (cf. Davis v. Carbon County, 369 Pa. 322, 330, 85 A. 2d 862, 867).

"What, then were the laws applicable to the particular questions here involved that were in force on November 6, 1951, when, by virtue of the adoption of the City-County *Constitutional* Amendment, the county officers and employes became officers and employes of the city?"

With reference to the contention that *the Sheriff and several other County officers* were in reality *Commonwealth* officers, the Court further stated (page 369): "Some point has been made of the fact that the former county officers in a few instances performed certain duties on behalf of the Commonwealth and to that extent were acting in the capacity of an

officer, agent or employe of the State:* Philadelphia v. Martin, 125 Pa. 583, 17 A. 507; Knisely v. Cotterel, 196 Pa. 614, 633, 46 A. 861, 864; Philadelphia v. Mc-Michael, 208 Pa. 297, 57 A. 705; Luzerne County v. Morgan, 263 Pa. 458, 107 A. 17. However, *just as the rendition of that service* did not militate against their general status as *county* officers, so now its continued rendition does not conflict with their general status as *city* officers." [Italics in original Opinion]

However, none of the aforesaid provisions of the Constitution, nor any relevant and applicable authority, nor sound reasoning can make a District Attorney of Philadelphia a Commonwealth officer as distinguished from a City officer, or exempt or exclude him from the aforesaid provisions of the Constitution or from the Home Rule Charter. Unlike a Prothonotary of the Court, and unlike a Register of Wills who is a probate Judge, *each of whom is particularly and specifically* provided for in the Constitution under the Judiciary Article, namely, Article V, as well as in the general Article XIV, §1, the District Attorney is mentioned *only once* in the Constitution, namely, Article XIV, §1,** and *in that one instance* he is clearly stated to be, as hereinabove quoted, *a County (now a City) officer.*

---

* The Register of Wills, under the Act of June 20, 1919, P. L. 521, §21, 72 P.S. §2381, is the appointed agent of the Commonwealth for the collection of inheritance taxes and the allowance of debts and proper deductions; and under the Register of Wills Act of June 28, 1951, P. L. 638, 20 P.S. §1840-101, it is clear and indubitable that the Register of Wills of Philadelphia County acts in a *treble* capacity of Clerk of the Orphans' Court of Philadelphia County, Probate Judge, and Agent of the Commonwealth of Pennsylvania for the collection of inheritance taxes.

** The Majority Opinion admits that "other than in Article XIV, §1, the office of District Attorney was not specifically mentioned in the Constitution and therefore in that respect *Lennox* is distinguishable."

Moreover, the District Attorney of Philadelphia is not a Judicial officer, but is merely, figuratively speaking, a quasi-Judicial officer. The District Attorney of Philadelphia (1) is *elected,* and (2) is *paid*—not by the Commonwealth but—*by the people of Philadelphia,* and (3) *his essential and principal and most important powers, functions, duties, limitations and boundaries* involve only crimes committed, not throughout the Commonwealth, but only in the City of Philadelphia.

Furthermore, Specter now takes a position (with which three members of this Court agree), diametrically opposite to the position which he (impliedly and necessarily) took in his brief and in his oral argument in *Com. ex rel. Specter v. Freed,* 424 Pa. 508, 228 A. 2d 382. In the *Freed* case, Specter contended that he had, as District Attorney of Philadelphia, a power of subpoena of magistrates, not under any Act of Assembly and not as a Commonwealth officer, but *solely* under §8-409 of the Philadelphia Home Rule Charter,* which *gave him that power as an officer of the City of Philadelphia.* How, then, can he now contend that he is a *Commonwealth* officer which would give him no such power?

Furthermore, the question of *removal* of the District Attorney of Philadelphia under Article VI §7 of the Constitution (1) is inapplicable to a County or City officer, and (2) *in any event does not support* the majority's conclusion that Philadelphia's District Attorney thereby became a Commonwealth officer. If this Constitutional provision of removal is applicable to a Philadelphia officer, i.e., the District Attorney, then it is equally applicable to *every County and every*

---

* In the *Freed* case, Mr. Justice ROBERTS, speaking for several members of the Court, said in his Opinion (page 510): "[the district attorney's] *sole* contention is that §8-409 of the Philadelphia Home Rule Charter invests him with the subpoena power."

*City and every Borough and every Township elected civil officer* in the Commonwealth,—an interpretation which is so strained and unrealistic as to be ridiculous. This is further clear from Article VI (which we shall subsequently quote at length) and other provisions of the Constitution which provide (as, for example, the provision in re. the Prothonotary of Philadelphia) how such office-holder can be removed.

Article VI of the Pennsylvania Constitution, which amended and consolidated Articles VI, VII and XII into a single Article VI, was adopted by the people of Pennsylvania on May 17, 1966 and pertinently provides:

"*Section 4. Power of Impeachment.*—The House of Representatives shall have the sole power of impeachment.

"*Section 5. Trial of Impeachments.*—All impeachments shall be tried by the Senate. When sitting for that purpose the Senators shall be upon oath or affirmation. No person shall be convicted without the concurrence of two-thirds of the members present.

"*Section 6. Officers Liable to Impeachment.*—The Governor and all other civil officers shall be liable to impeachment for any misbehavior in office, but judgment in such cases shall not extend further than to removal from office and disqualification to hold any office of trust or profit under this Commonwealth. The person accused, whether convicted or acquitted, shall nevertheless be liable to indictment, trial, judgment and punishment according to law.

"*Section 7. Removal of Civil Officers.*—All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have

been appointed. *All civil officers elected by the people,* except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate."

I believe that the removal of the District Attorney of Philadelphia and the penalties imposable upon him are specifically provided for in and governed by Article X, §10-107(6) and §10-109, of the Philadelphia Home Rule Charter. Even if we assume arguendo that Article VI of the Constitution, as amended in 1966, providing for impeachment and for removal of officers, is applicable, Article X, §10-107(5) and §10-109 of the Charter are both applicable and Constitutional. However, in no event, even by the wildest stretch, can the above quoted provisions of Article VI of the Constitution change and transform the District Attorney of Philadelphia from a City officer into a Commonwealth officer.

For each and all of these reasons, I dissent.

---

OPINION BY MR. JUSTICE MUSMANNO:

The Court in this case is evenly divided on the question as to whether Arlen Specter must or must not resign under §10-107(5) of the Philadelphia Charter. Justices JONES, O'BRIEN and ROBERTS have voted that Arlen Specter is not a city officer and that, therefore, he is not required to resign as District Attorney in order to continue his candidacy for the office of Mayor of Philadelphia. To the contrary, Chief Justice BELL, Justice EAGEN and I have voted that Arlen Specter is a City officer and that he is bound by §10-107(5), requiring him to resign as District Attorney if he continues as candidate for Mayor.

Justice JONES begins his Opinion with the statement: "The basic issue which this appeal presents,

important in its consequence, is narrow in its scope: *do the provisions of Article X, §10-107(5) of the Philadelphia Home Rule Charter require that the District Attorney of Philadelphia, by reason of his candidacy for election as Mayor, resign?"* (Emphasis supplied.)

In view of that precise, definitive statement of the issue, and in view of the vote 3 to 3 on that issue, I respectfully submit that Chief Justice BELL errs in calling his opinion a dissenting opinion. It is not a dissenting opinion because there is no majority opinion. Justice JONES' opinion, as I point out later, is not the majority opinion and he does not so indicate that it is the majority opinion. I respectfully object also to Justice EAGEN entitling his opinion a concurring and dissenting opinion because, I repeat, there is no Majority Opinion. How can there be a majority when 6 people are divided 3 to 3? Justice EAGEN specifically states in his Opinion:

"It is my personal conclusion that Specter, as District Attorney of Philadelphia, *is within and subject to the provisions of the Philadelphia Home Rule Charter, particularly §10-107(5)*. (Emphasis supplied.)

Justice EAGEN, therefore, states in the clearest language possible that Mr. Specter is bound by §10-107(5), and that he cannot both hold the office of District Attorney and at the same time be a candidate for Mayor of Philadelphia.

And now I proceed to a discussion of the issue in this case, as stated by Justice JONES, namely, shall the District Attorney be compelled to resign his office as District Attorney if he continues his candidacy as Mayor?

On November 21, 1966, Arlen Specter, as District Attorney of Philadelphia, came into the Supreme Court of Pennsylvania and asked this Court to declare him a city officer under the Philadelphia Home Rule Charter. He stated that under the charter he would have subpoena jurisdiction which, in the form he requested

it, could well involve an all-enveloping absolutist power unknown in any country outside of a police state.[1]

On May 2, 1967, Mr. Specter again came into the Supreme Court and, this time, asked the Court to declare that he was *not* a city officer and, therefore, did not come under the city charter.

Why this change? On March 7, 1967, Arlen Specter became a candidate for the office of Mayor of Philadelphia and he now wished to be divorced from the city charter, which he had so ardently wedded in word and spirit in November, 1966. It cannot be doubted that this 180-degree turn, this switch in direction, this metamorphosis from a would-be city officer to a would-be state officer, was dictated for reasons of political advantage because if Mr. Specter's wishes of November 21, 1966, had attained fulfillment he would be compelled, under the city charter, to resign as District Attorney in order to be a candidate for Mayor of Philadelphia.

The City Solicitor of Philadelphia filed an official opinion in which he affirmed Arlen Specter to be a city officer and, since Specter refused to resign as specified by the charter, being now a candidate for Mayor, the city solicitor directed the Finance Director of Philadelphia to discontinue Arlen Specter's salary as District Attorney. Mr. Specter filed a complaint in mandamus in the court of common pleas to compel the Finance Director to pay him his salary. The court of common pleas decreed that Specter was entitled to his salary on the basis that he was a State officer and, therefore, not bound by the city charter. The City of Philadelphia appealed.

There is only one question in this case and that is: Is Arlen Specter, District Attorney of Philadelphia, a city officer and thus required by the city charter, to

---

[1] This Court rejected Mr. Specter's extravagant request.

resign as District Attorney in order to continue his candidacy for Mayor of Philadelphia? Mr. Specter answered that question in the *affirmative* on November 21, 1966, when he appeared here in a city charter suit, each button glistening with the aura of Philadelphia jurisdiction: one proclaimed him a city officer because he was paid by the City of Philadelphia, another declared him a city officer because his offices are in city hall maintained by the city, another spoke of his employees all being paid by the city, and so on, and on.

But Mr. Specter answered that question in the *negative* when he appeared here on May 2, 1967, wearing a different suit, each one of its buttons glittering with State jurisdiction. This fashion change manifests a certain versatility in the plaintiff that is interesting to behold, but it does not effect any transformation in the physical facts and legal aspects of the case. Arlen Specter is the same official person today that he was on November 21, 1966, and no change in raiment can suspend the operation of the Pennsylvania Constitution by which he is bound. No raising of a forensic umbrella can protect Arlen Specter from the deluge of legal pronouncements which shrink his May 2nd suit to the size and cut of the garment he donned last November 21st.

On May 2, 1967, Mr. Specter, as plaintiff in this litigation, argued at length that he is a State officer and filed a voluminous brief to give an authoritative sheen to the suit he wore that day. But nothing he said, or can say, no sartorial ambidexterity, can alter the clear-as-glass, straight-as-a-ramrod language of Article XIV, §1 of the Pennsylvania Constitution which states with kindergarten simplicity: "County officers shall consist of . . . district attorneys and such others as may from time to time be established by law."

Article XIV, §8, announces in words as vividly as painted wooden blocks: "(1) In Philadelphia all county officers are hereby abolished and the City shall henceforth perform all functions of county government within its area through officers selected in such manner as may be provided by law."

To deny that these two pronouncements of the State Constitution make the District Attorney of Philadelphia a City officer is simply to repudiate the English language. No amount of rhetoric, no indulgence in high-pressured dialectics, no sleight-of-hand verbal performance, no rapid change in wearing apparel can alter the stark anatomical fact that the highest law of our Commonwealth, the Constitution itself, announces in words of thunder that the District Attorney, who was once a county officer, is now a city officer! Nor can any camouflaged cloak allow a city officer to slip undetectedly past the charter sentinel, who proclaims so that all Philadelphia can hear: "No officer or employee of the City, except elected officers running for re-election, shall be a candidate for nomination or election to any public office unless he shall have first resigned from his then office or employment." (§10-107 (5) Philadelphia Home Rule Charter).

The object of this specific charter provision is to prevent that a city officer should dive into the waters of a political campaign, leaving on shore the duties he owes the office to which he has already been elected. But there is a far more important and impelling reason why the Philadelphia District Attorney should resign when he is a candidate for Mayor. The reason is that a government official should not use the power and equipment of his present office to harass and badger his political opponent through the instrumentality of his present office. It is clear, in a historical study of §10-107(5), that its proponents wished to eliminate the obvious unfair advantage residing in a

district attorney, to wheel his official position into action, like an artillery piece, and, with it, threaten his political adversaries with prosecution and harassments. Such a situation, which the proponents of the charter viewed with dire apprehension, could seem to be evolving in the current electoral contest in Philadelphia.

The news media, of which this Court must take judicial notice, allows for the interpretation that Arlen Specter, in conducting the functions of his office as district attorney, is making of that office a formidable weapon against his political rivals in his mayoralty campaign. Speaking as district attorney he charges the opposite political party and members thereof with violating the law, thereby raising the inevitable implied threat that he will draw the sword of his prosecutor's position to perforate the aspirations of his political opponents. He may not, in his own mind, be fusing the sword of the district attorney with the blade of a political campaigner. He may believe he is drawing from two different scabbards, but the general public may not distinguish between them.

There have been occasions where he has openly attacked members of the party opposing the party to which he is currently attached, charging them with law violations and permitting the inference to be drawn that as a district attorney he will prosecute those political adversaries, all the time making hay in the blazing sun of a political summer. This type of activity could be compared to that of a policeman, who is a candidate for local office against a resident on his beat, threatening to arrest his opponent and throw him into jail. Such activity does not comport with the American concept of fairness and sportsmanship. This type of performance could be compared with the actions of a referee of a prize fight who favors one of the pugilists over the other, and so, occasionally, throws a punch himself at his favorite's opponent.

There is something simply manifestly inequitable about a district attorney, with the whole prosecution machinery at his command, using, or threatening to use, or even only seeming to threaten to use the armament of his office, to bolster his candidacy for a different office, when his opponent and his opponent's supporters have no way of similarly fighting back. It was to obviate and make impossible such a possibility that §10-107(5) was conceived and made part of the charter.

A historical study of the Philadelphia charter movement reveals that the pioneers and proponents of the home rule enterprise were very much concerned about the part the district attorney should play in the new city government. It was obvious that one who would be at the very center of the establishment maintaining law and order had to be an integral part of the city government which was now to have autonomy. Thus, in the constitutional amendment leading to the charter itself, all county officers (and the district attorney's office was specifically listed as a county officer) were to become city officers. The pioneers and proponents of Home Rule, as men of intelligence and foresight, realized that the district attorney, by the very nature of his office, exercises tremendous influence on public opinion. This influence results particularly from the fact that the district attorney as the overseeing general in the never-ceasing battle against crime and disorder, creates considerable legitimate news and is therefore a focal point of intense public interest. The momentum of his actions is such that even statements made by him on subjects having nothing to do with law enforcement in Philadelphia are accepted and published. A high public duty, therefore, rests on the district attorney to speak facts as they are and not to embellish them with imaginative forays.

Thus, the community of Philadelphia could not but be astonished when it learned recently that a highly descriptive account of the district attorney's visit to the Canadian Exposition floated on a magic carpet of fiction and conjuration. The district attorney reported to Philadelphia on his visit to the fair by stating that he found it "noncommercial," that it had "dignity and beauty and offers a wide range of subject matter that can best be categorized as the fulfillment of man's promise." If the Canadian Exposition does this, it does more than any world's fair I have attended and, indeed, accomplishes more than mankind has been able to achieve throughout the ages, namely, "the fulfillment of man's promises." One could only wish in retrospect that, if this represents reality, the President of the United States and the Premier of the Soviet Republic had met at the resplendent Canadian Exposition in Montreal, instead of at the modest little college in Glassboro, New Jersey.

The district attorney found also, at the exposition, that the "new technology used in the exhibits from all parts of the world" was so captivating that it made him "feel like a participant," and that he became "engrossed and enchanted in a galaxy of lively subject matter." All this could not help but cause the Philadelphia people to feel that they were fortunate to have so sensitive a district attorney who became so enchanted in a galaxy of lively subject matter that, as he stated, his "emotions" were "stirred" and his mind was "stimulated." The only thing which marred the district attorney's rhapsodical description of his visit to the Montreal exposition was that, as it developed later, he had never been to Montreal!

Now all this has relevance to the issue at hand because the district attorney has taken two diametrically opposite positions as to his status. It would be helpful to the Court, in determining the issue here, to know

which position Mr. Specter actually carries under the breastplate of his forensic armor. He has argued, as I have indicated, with sedate and solemn conviction, that he *is* a city officer, and he has spoken, with apparently equal ardor, that he is *not* a city officer. What does he really believe? It would appear that the district attorney, in presenting his case for either side of the coin, does not restrict himself to the law but advances reasons which should be addressed to a legislative committee contemplating changes in the law, rather than to a Court which is only interpreting what is already written into the law. For instance, Mr. Specter asks rhetorically: "Is it reasonable that the Mayor should be able to use the power of his office to seek reelection, but on the other hand, a holder of another office, no matter how high or low, should not be able to continue in his position while a candidate for Mayor?"

The founders of the Constitution and the lawmakers in Harrisburg and Philadelphia have already governmentally spoken on this subject. They have said that a mayor may run for re-election while still holding his office as mayor, and they have *also* said that a district attorney may run for re-election while still district attorney. What could be fairer than that? Mr. Specter, however, sees inequality in this equality. But the inequality is a mirage in the political glasses he wears as a candidate, and not because of what is in the law.

From his quotation above noted, it will be seen that Mr. Specter advances the spectacular proposition that he has the right to use the *power* of the district attorney's office to run for Mayor! While traveling on his magic carpet to Montreal, he dipped down (that is, he anticipatingly retroactively dipped down) into Cooperstown to visit the Baseball Hall of Fame, and he commented on the sensations he experienced on this nonvisit. On his fanciful tarrying in the Baseball Hall

of Fame, he failed to see the sheer unbaseball-like unfairness and outright unsportsmanship of deploying the powers of his district attorney's office on the political battlefield as he wages his campaign for mayor. He failed to see that there is a difference as wide and as long as the St. Lawrence River, on which the Canadian Exposition glitters in "dignity and beauty", between the powers of a mayor and the powers of a district attorney.

The Mayor cannot embarrass, badger, harass and torment political opponents by threatening them with a grand jury investigation, an arrest or a forced detention. The District Attorney can do all these things and, indeed, communication media would indicate that the present District Attorney has made public statements which would suggest that his saber of prosecution is half out of his scabbard as he looks upon the actions of some members of the party he opposes.

On November 21, 1966, he wore the garment of a city officer, and on May 2nd he appeared in the habiliments of a state officer, but today he wears only one suit, the suit which marks him as a candidate for mayor. But while bustling about in that political suit, he still speaks as district attorney. How are the people to differentiate between what he says as a district attorney, when absolute truth is mandatory, and when he speaks as a world traveler candidate?

In his insistence that the district attorney's office is in a class by itself and, therefore, cannot possibly be part of the city government, even though without the city government his office could not function (indeed, in this very litigation, he is suing the city government for the funds he needs to function as a district attorney), Mr. Specter says: "The District Attorney's office is an independent agency, a protector of the public safety and liberties, a watchdog which by its very nature and function can never integrate into municipal government."

It is this very "watchdog" business which should compel Arlen Specter to resign when he is running for mayor because the district attorney's bark is not the squeak of a Pckingese, but the low, muttering admonitory growl of the mastiff that can implement his growling with action, as for instance, an arrest which, no matter how much the arrested person might later be fully exonerated, could do him irreparable harm.

In any event, the plaintiff, as a "watchdog", barks up the wrong tree when he argues that §10-107(5) cannot apply to him because he is in a special class. There are no special classes in legislation, government, or a democracy. Mr. Specter argues for immunity from §10-107(5) because, he says, "The office of District Attorney was not created by the Home Rule Charter." But the answer to that superficial observation can be found in the fact that neither were the offices of sheriff, commissioners, recorders of deed and other offices created by the Home Rule Charter. They were created by the same Constitution which brought into being the office of district attorney. Yet the sheriff, commissioners, and recorders of deed, are now, by action of law, together with the district attorney, city officers!

The plaintiff cannot point to a statute which says that the district attorney shall not be a city officer. He cannot so point because there is no such statute. If the Legislature had intended to remove the district attorney from the provisions applicable to the other county (now city officers), it would have been a simple thing to have said that the district attorney, notwithstanding everything else, remains a county officer, or a State officer as Mr. Specter now maintains. But the Legislature did not so state. And that should end the matter.

Mr. Specter, still complaining that §10-107(5) is unfair to him, says that "Mayor Dilworth has always contended that it was unreasonable and unfair." I do

not know that Mr. Dilworth has "always contended" that the cited section was "unreasonable and unfair," but I do know, and so does the rest of the world know, that Mr. Dilworth respected the law and lived up to it by resigning his office of mayor when he became a candidate for Governor. He also resigned his office as district attorney when he became a candidate for mayor.

Mr. Specter says that the City of Philadelphia is "concerned only with municipal affairs." This is hardly true. Philadelphia is concerned with State affairs and National affairs. It is concerned with upholding State laws and State regulations, it houses innumerable State offices and institutions, it equips and implements many State enterprises, it is concerned with interstate navigable streams, it is a seaport, it berths a Federal Navy Yard, etc., etc.

Then the plaintiff enumerates a number of statutes to show that the General Assembly regards district attorneys as State officers. He cites statutes of 1883, 1850, 1919, 1923, and 1860, all enacted before the Home Rule Constitutional Amendment and the Home Rule Charter, and thus all as irrelevant as the snows of yesteryear.

It is a rule of this Court that when an even number of judges sit on a case, and the vote among the judges is equally divided, the decision of the lower court, from which the appeal has been taken, is affirmed. That has happened in this case. As already stated, 3 Justices have voted that Arlen Specter is bound by §10-107(5) and 3 have said he is not so bound. This kind of a seesawing, teetering affirmation does not carry much legal or moral conviction. It is simply a surrendering to circumstance because a full court did not deliberate on the case. Where so important an office as the mayor of the largest city in Pennsylvania is at stake, the winner of a fluctuating

decision of this character cannot use the decision as evidence of Supreme Court approval of his legal position which is so completely at variance with the Constitution, the statutes and previous decisions of this Court.

The plaintiff sees in the opinion of the lower court a strong wind supporting and filling the sails of his forensic ship, taking him into the port of a legal vindication of his position. He quotes the following from the lower court's opinion: "The enforcement of the criminal law of the Commonwealth is an exercise of sovereign power. It is inconceivable that the District Attorney can be regarded as representing any other body than the Commonwealth. It is the Commonwealth's laws that he enforces; he acts almost totally in litigation in which the very style of the case is 'Commonwealth v. Defendant.'"

An analysis of this passage will show that the supposedly strong motive wind filling the sails of the plaintiff's craft is but a feeble zephyr which leaves the district attorney stranded in the doldrums of illogic, sophistry and unreality. Giving to litigation the title of Commonwealth v. Defendant does not make the district attorney *the* Commonwealth. After all, more than the district attorney are involved in a prosecution. There are the police, detectives, grand jury, prosecuting witnesses, etc., etc. But, more significant than that, it is as obvious as the tower on the City Hall of Philadelphia that every governmental act in the state, whether performed by State, county, or municipal officers, is necessarily done in the name of the Commonwealth since only the Commonwealth has sovereignty.

Take, for instance, the sheriff. No officer in the Commonwealth speaks with more power and authority for the Commonwealth than the sheriff and yet, in Philadelphia, the sheriff is a city officer. Take the Police Commissioner of Philadelphia. His power is

awesome and all-embracive in the enforcement of the criminal laws of the Commonwealth. And yet in Philadelphia he is a city officer. Consider the City Solicitor of Philadelphia. When he acts to enforce State statutes he represents the Commonwealth. But who can doubt that he is a city officer? There are numerous illustrations of city officials carrying out the laws of the Commonwealth, e.g., the Commissioner of Licenses and Inspections who enforces the State as well as city building codes; the Records Commissioner who collects State realty taxes, the Commissioner on Human Relations who enforces State as well as local laws against racial and religous discrimination. As a matter of fact, there is scarcely a city official who does not find himself in some way carrying out the laws of the Commonwealth.[2]

The lower court unquestionably found itself sailing into head winds when it hoped to find reasons to support its illusory conclusions. And so it was forced to admit that: "A mere surface examination could yield the view that, because Art. XIV, sec. 1 of the Pennsylvania Constitution specifies that 'county officers shall consist of [inter alia] district attorneys,' and because Art. XIV, sec. 8(1) abolishes all county offices and provides that 'all county officers shall become officers of the City of Philadelphia,' the District Attorney is therefore also simply a city officer immediately subject to the Charter provisions."

After this concession, which practically decides the case against Arlen Specter, who is now urging he is not a city officer, the court then went below a "surface examination." It crash-dived into the submarine depths and found the argument that: "a consideration of the

---

[2] "The mere fact that the county attorney represents the state in certain cases does not make him a state officer." 27 C.J.S. Dist. & Pros. Atty. §1, pp. 625-6.

history, functions, character and nature of the District Attorney's office compels a much more cautious disposition of the question."

But, even at this depth, the court was compelled to move cautiously and it came to an all but conclusive admission against Arlen Specter, namely, "Were it not for the single troublesome fact that district attorneys are denominated as county officers in Art. XIV, sec. 1, I would have no difficulty whatsoever in concluding that the District Attorney is and must be regarded as a state officer."

The lower court found it "troublesome" that the Constitution declared the district attorney a county officer. This is indeed an understatement. It is like saying that one finds it troublesome that the State may not twice put a defendant in jeopardy for the same offense because the Constitution prohibits just that! It is like saying that one finds it troublesome to proclaim that the printing presses shall not be free because the Constitution states that it *shall* be free! The Constitution was not engaging in empty rhetoric when it said "No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." It stated not a "troublesome" proposition but the law of the land! And when that same Constitution says that a district attorney is a county officer, it speaks in words which admit of no equivocation, evasion or weaselling.

It said the district attorney is a county officer, period, paragraph.

The lower court, after hitting the submerged pylon of Article XIV which makes the district attorney a county officer, and by later amendment, a city officer, quickly surfaced and, shaking off the effects of the unexpected impact, declared that the district attorney must be a state officer because "it is the Commonwealth

laws that he enforces." But what laws do the sheriff of Philadelphia, the police of Philadelphia, the City Solicitor of Philadelphia enforce? Certainly not the laws of Bulgaria. They are the laws of the Commonwealth of Pennsylvania! To say that the District Attorney of Philadelphia, in the face of specific constitutional language to the contrary, is not a city officer is like saying that he must be a State officer because he breathes the air of Pennsylvania.

In its subsurfacing and resurfacing, the lower court has lost track of the decisions of this Court on this very subject. In *Lennox v. Clark*, 372 Pa. 355, this Court held that the former county offices of sheriff, county commissioners, recorder of deeds, clerk of quarter session, coroner, board of revision of taxes and registration commission, were, under the charter, city offices and subject to the several provisions thereof. Chief Justice STERN said in the clearest language possible: "Apart from precedents either pro or con, it would be wholly incredible to suppose that the only accomplishment intended by the City-County Consolidation Amendment was the merely puerile one of a change of titles, and that for such a superficial purpose alone two successive legislatures voted upon the amendment and the citizens of the Commonwealth adopted it at a state-wide election! Certainly something more substantial was intended to be wrought by its enactment. Its real and designed result was that, when the *former county officers became city officers and the former county employes city employes, they automatically* became subject thereby to the laws then in effect governing and regulating *city* officers and employes, and also, of course, to any such laws as might thereafter become effective." (Emphasis supplied)

In *Clark v. Meade*, 377 Pa. 150, an attempt was made to exclude the district attorney's office from the civil service provisions of the Home Rule Charter. This

Court refused the exclusion, stating: "And it is impossible to discover any reason for the pronouncement that a stenographer in the office of the district attorney may be dismissed only for cause, but a stenographer of the same grade, receiving the same compensation in the office of the Sheriff or the Board of Revision of Taxes may be dismissed arbitrarily."

In *Schultz v. Philadelphia,* 385 Pa. 79, this Court found a proposed amendment to the Home Rule Charter, which would have excluded the office of the district attorney, with other offices, from civil service requirements, unconstitutional. At no time in all the discussion revolving around that particular litigation did any one make the slightest suggestion that the office of the district attorney was not a city officer under the charter.

Since only six judges sat on this case, and the Court divided equally between affirming and reversing the lower court's decision, there is no Majority Opinion of this Court. Justice JONES has filed an opinion affirming the lower court. I am writing an opinion reversing the lower court. In point of authoritativeness, my opinion is just as effective as that of Justice JONES and, of course, I say this with great respect.

Justice JONES cites the *Lennox* case, as supporting his view because the Court excluded the offices of prothonotary and register of wills from the City Charter, even though they were listed, with the district attorney's office and other offices, in the Constitution as county officers. By this illustration, he argues that if the prothonotary and the register of wills could be excluded from the City Charter, so can the district attorney. But in his very discussion of this point, Justice JONES destroys the comparison because he points out, and properly so, that the prothonotary and the register of wills receive special mention in the Pennsylvania Constitution apart from the enumeration in

Article IV, §1. Justice JONES specifies: "Article V, §7 of the Constitution specifically provided for the office of prothonotary in Philadelphia, his manner of appointment and his authority to appoint assistants, such constitutional status led our Court to conclude that the prothonotary, even though constitutionally designated as a 'county officer,' did not fall within the City-County Consolidation Amendment and was not converted thereby into a 'city officer.' As to the register of wills, also the subject of a special provision in Article V, §22 of the Constitution, the Court concluded that the register of wills was not, by the amendment, converted into a 'city officer' and did not become subject to the charter."

But there is no provision in the Constitution which specifically refers to the district attorney as the above designated ones apply to the prothonotary and the register of wills. Thus the district attorney may not become an exclusionary partner of the prothonotary and the register of wills on the basis of the *Lennox* case.

Brother JONES says that the district attorney does not perform his duties "on behalf of either a county or city." If he means by this that the district attorney has nothing to do with running the public parks and the water system of Philadelphia, it could be an argument that he is not a city officer, but the district attorney deals with the people of Philadelphia in the same way as the sheriff deals with the people, and if the sheriff can be designated, and has been so designated by this Court, a city officer, why is the district attorney not a city officer? The sheriff represents the sovereign power of the Commonwealth perhaps even more than the district attorney because he executes the laws of the Commonwealth, whereas the district attorney only prosecutes those who violate the laws. I repeat the sheriff is a city officer. Why isn't the district attorney a city officer?

My respected colleague Justice JONES says that "*all*
of the duties of the district attorney are performed on
behalf of the Commonwealth." So does the sheriff en-
force the laws of the Commonwealth but that does not
make him a State officer. And it is to be noted that
while the district attorney prosecutes those who vio-
late the laws of the Commonwealth he ALSO prose-
cutes those who violate the local ordinances of the
City.

In his brief the district attorney says that: "Since
the District Attorney is a Constitutional officer, the
exclusive method of his removal is that set forth in
Article VI, Sec. 7 of the Pennsylvania Constitution."

Mr. Specter conveys the impression by this state-
ment that Article VI refers only to the district at-
torney. The impression is erroneous. Justice JONES
quotes the constitutional provision as follows: "*All*
civil officers shall hold their office on the condition
that they behave themselves well while in office, and
shall be removed on conviction and misbehavior in of-
fice or of any infamous crime. . . . *All* civil officers
elected by the people [with certain exceptions not pres-
ently relevant], shall be removed by the Governor for
reasonable cause, after due notice and full hearing, on
the address of two-thirds of the Senate." (Emphasis
supplied.)

Thus, we see that this section applies to *all* city
officers which, of course, includes the sheriff; and we
have stated, and repeat, and continue to repeat, that
the sheriff is a city officer, no different from the dis-
trict attorney in this regard.

Mr. Specter argues his case by saying: "None of
the other sixty-six District Attorneys in the Common-
wealth are required to resign from office to run for
other office."

But he overlooks that Philadelphia is the only first
class county and the only first class city in the Com-
monwealth. Philadelphia is autonomous, it has its own

charter, and, to the extent that Mr. Specter enjoys the privileges of living and being elected in Philadelphia, he must undertake the responsibilities that go with such residence and election.

The plaintiff argues that to disqualify him as district attorney under §10-107(5) would be a violation of Constitutional Article VI, stating: "It is difficult to perceive of a more devastating way to affect the powers of a District Attorney than to remove him from office."

This may be witty but not wise because if this Court were to decide in favor of the defendant and not in favor of the plaintiff, Mr. Specter would still not be removed from office. He would still be district attorney and he could continue to remain district attorney by withdrawing his candidacy for Mayor of Philadelphia.

No provision in the Constitution, no statute of the Commonwealth, no section of the City Charter compels him to be a candidate for Mayor.

The District Attorney initiated this litigation in order to obtain his salary as district attorney. The City opposed the District Attorney's complaint in mandamus on the ground that under §10-107(5) Mr. Specter could not be a candidate for mayor and still remain district attorney. What we are called upon to decide in this case is whether Arlen Specter shall receive his salary as district attorney if he remains a candidate for mayor. Thus the plaintiff raises an artificial issue when he says that the City's answer, if accepted, amounts to removing him from office. I regret to say that my friend Justice JONES, in his opinion, falls into a similar non sequitur. If this Court would decide that Mr. Specter cannot simultaneously be a district attorney and mayoral candidate, he would still, as I have stated, not be removed from office. The decision would be up to Mr. Specter. If he would in-

sist on remaining mayoral candidate, without resigning his present office, then, and only then, would the question of removal from office become an issue. And that question would then be resolved through quo warranto proceedings, or application of Article VI of the Constitution.[3]

I hold that Arlen Specter is a city officer and, under the City Charter, §10-107(5), he must decide whether he will run for mayor or sit as district attorney. Under the Constitution, the statutes, and his responsibility to the people, he cannot simultaneously both run and sit. In view of what I have stated in this Opinion, I further hold that it is legally immoral for a government official, armed with the unlimited prosecuting powers lodged in the office of District Attorney, to carry on an election campaign against those who are opposed to him politically.

[3] Mr. Specter, in his brief, calls our attention to the "case of District Attorney George Joseph of Lehigh County who ran for the United States Congress while still capably performing the duties of his office." It is not our responsibility to determine how capably Mr. Joseph ran his office as against how capably Mr. Specter is running his office.