## Commonwealth v. Cooney

*Ellen L. Cohen, assistant district attorney*, for the Commonwealth.

*Benjamin H. Claar, Jr.,* for complainant.

BRUMBAUGH, *J.,* January 23, 1986—This case is unusual in that we have been asked to overturn the decision of the Blair County District Attorney's Office not to prosecute one for an offensive act he has purportedly admitted committing, and as to which the assistant district attorney handling the matter has conceded at closing argument on December 13, 1985, following evidentiary hearing, there is "no question it [the act] occurred."[1]

The charge of cruelty to an animal under the Crimes Code of 1972 as amended, 18 P.S. §5511(a)(1), was initiated by private complaint of Jeffrey T. Santoni against Donald P. Cooney filed on June 26, 1985 before District Magistrate John B. Greene. Since Mr. Santoni was not a law enforcement officer said magistrate properly forwarded the complaint to the district attorney's office, where the matter was referred to First Assistant District Attorney Ellen L. Cohen for review and a determination of approval or disapproval, all in accordance with Pa.R.Crim.P. 133(a). On July 12, 1985 Attorney Cohen checked the "Disapproved" box on the face of the complaint, stating thereon as her reason that the "statute of limitations has expired," and re-

---

1. The testimony of this proceeding has not yet been transcribed, but our own bench notes are most accurate.

turned the same to Magistrate Greene by cover letter of the same date. Notification of this disapproval was apparently given to the complainant-appellant, Mr. Santoni, by the district attorney's office, although the original complaint form was not returned to him.[2] Thereafter, pursuant to Pa.R.Crim.P. 133(b)(2), Mr. Santoni petitioned this court for approval of his complaint, averring error and an abuse of discretion by the district attorney's office on the ground that the face of the complaint alleges the offense to have taken place on July 17, 1983 and consequently within the two-year limitations period of the Judiciary Act of 1976, as amended, 42 Pa.C.S. §5552(a).

An allegation of the commission of an undisputed act on a given date, however, does not per se establish its occurrence on that very date. While in exceptional cases when the evidence is unrebutted a trial judge may take a limitations-period issue from the jury (see Commonwealth v. Hawkins, 295 Pa. Super. 429, 441 A.2d 1308 at 1311, fn. 5, (1982)), the question of expiration of such a time limitation is generally an issue of fact. Long-settled is that the Commonwealth, in order to sustain a conviction, must prove commission of the crime upon a date fixed with reasonable certainty which falls within the statutory period. Commonwealth v. Kuhn, 200 Pa. Super. 649 at 653, 190 A.2d 337 at 339, (1963), allocatur refused; see also Commonwealth v. Devlin, 460 Pa. 513, 353 A.2d 888 (1975). Surely this onus at trial is a factor which the potential prosecutor may consider.

_____

2. We do not deem this technical noncompliance with Pa.R.Crim.P.133(b)(2) as relevant to or in any way affecting the substance of the charge.

It should first be noted that Mr. Santoni in the complaint form sets forth an "on or about" date as the day of the incident, allowing for some leeway under his own averment; this is significant when viewed in light of the fact that that approximate date so alleged by him is but three weeks short of the assumed limitations expiry on July 18, 1985. Moreover on May 15, 1985, exactly six weeks prior to making his complaint affidavit before the magistrate, Mr. Santoni had written in his own hand that as of that earlier time the alleged crime had occurred "Almost two years ago" (see Commonwealth's exhibit 1). If the date and time were so clearly and precisely fixed in his memory, why did he not include them at the outset rather than only in response to Magistrate Greene's request? Although testifying positively and absolutely that there was "no question in my mind as to the specific date," Mr. Santoni stated that he had never written down when the incident happened before going to the magistrate. The supposed uniqueness of relating the occurrence to the day immediately prior to Mr. Cooney's payday at The Altoona Hospital and during his vacation vastly wanes upon recognition that there were many such days in the course of Mr. Santoni's May-to-October seasonal apiary employment by Mr. Cooney; the latter was paid every two weeks by the hospital and took one week's vacation each month during that yearly five or six-month period of operation of his bee business, Mr. Santoni assisting him for at least several years in this commercial endeavor. We also have difficulty envisioning one setting a fire in his home furnace for the singular purpose of destroying the remains of one small cat in the middle of the summer — during presumably the hottest month of the entire year — when

common sense dictates simpler alternatives for disposing of the carcass on a farm.[3]

Mr. Santoni explained his failure to initiate the charge against Mr. Cooney promptly following the incident on the ground of his impliedly subservient and dependent status: he was at the time a boarder in Mr. Cooney's home and a hired hand of the latter, engaged in general building maintenance and groundskeeping at the Cooney residence, apartments and Sinking Valley farm. Although the circumstances and occasions were not elaborated upon other than that they took place during his aforesaid employment, Mr. Santoni further testified that Mr. Cooney threatened him, telling him that he would lose his job and living-quarters if he undertook action against the latter for the incident. Such restraint and deferral must nonetheless be considered in relationship to the termination of his employment in May of 1985. Mr. Santoni testified that he lost his job with Mr. Cooney when the latter sold his farm; while asserting that this severance was not caused by conflicts between the two of them and denying that he was evicted from the premises, he acknowledged that they had a dispute over removal of Mr. Santoni's personal belongings of such gravity that he did receive a letter from Mr. Cooney's attorney concerning the matter.[4]

---

3. We are not doubting that Mr. Cooney cremated the cat in his furnace, but we do find it more logical to assume that the fire was already set and not just built for that particular purpose. Mr. Santoni's handwritten version states that Mr. Cooney "then put the cat into a rip-roaring furnace," which would strongly suggest that the fire was blazing away before the cat was slain. A reasonable inference from the circumstances is that it was not the summer season.

4. This letter was never produced in court or made a matter of record.

Differences and obvious lack of harmony between the two men could well have caused Attorney Cohen to project that a trier of fact would not be satisfied that the charge was brought within the requisite two-year period, owing to negative feeling or bias on complainant-appellant's part toward his former employer. This conclusion is fortified through the two-plus-week inquiry following the magistrate's referral by Eugene R. Kowaleski, a retired Pennsylvania State Policeman serving as an investigator for the Blair County District Attorney's Office over the past several years. None of the persons[5] with purported knowledge of the killing[6] other than Mr. Santoni could say that it occurred within two years of the filing of the charge. One of the persons contacted, Mr. Larry Bauer, is now a Cooney employee himself; another, Mrs. Eleanor Walker, became upset, didn't want to side with either Mr. Santoni or Mr. Cooney and told the investigator, "I want these two boys to get the thing worked out between them" (thereby impliedly confirming that this proposed prosecution is rooted in personal illwill); and the other lady, Mrs. Sally Young, with whom Mr. Kowaleski conversed in a face-to-face meeting, was emphatic in July of 1985 that the unfortunate incident "happened a good two years ago" and "might even be three years" but could not have

---

5. The thoroughness of the investigation is indicated by Mr. Kowaleski's contact with all potential witnesses listed on Mr. Santoni's affidavit, in addition to both Mr. Cooney and Mr. Santoni.

6. There being no eye-witnesses to the incident besides the complainant-appellant and the perpetrator, the other proposed witnesses apparently learned of it from Mr. Santoni, who produced no witness supportive of his case at hearing before us.

occurred later than April of 1983, her recollection of the time element being based upon a period during which she and Mr. Cooney owned the same breed of dog. The evaluator could therefore have easily concluded that none of these three individuals could aid a prosecutorial cause and that, in reality, both ladies would indeed be better potential witnesses for the defense. The final assessment by Attorney Cohen came only after meeting and consultation with Mr. Kowaleski upon completion of his investigation.

There are a number of factors relevant to a district attorney's office in deciding whether to prosecute a case or not, such as the likelihood of conviction, congestion of the court calendar, prosecutorial resources and personnel available, and the seriousness of the offense charged. We certainly cannot hold that the comparative weight of these factors favors proceeding in the matter at hand. Moreover we are not free to override rejection of a private complaint unless we determine that the refusal to prosecute is such an abuse of discretion as to constitute a miscarriage of justice. We have stated in Commonwealth v. Braun, 19 D.&C.3d 572 (1980), at 574:

"That our right of review is restricted appears in Com. v. Morris, 267 Pa. Super. 379, 381, 406 A.2d 1091, 1092 (1979), quoting with approval Shade v. Com., 394 F. Supp. 1237, 1242 (M.D. Pa. 1975):

" '[W]hile there may be instances in which the courts would be entitled to review the exercise of prosecutorial discretion, such review is limited to circumstances involving the deliberate use of such factors as race, religion, or other suspect classifications . . . . In the absence of such factors, the exercise of prosecutorial discretion does not violate due process or equal protection of the law.

•   •   •

" 'The criminal law is not a computerized system and discretion . . . is a necessary and inherent part of the criminal-justice system. Prosecutorial discretion in law enforcement 'is by its very nature exceedingly broad' and such discretion is an essential part of the criminal-justice system.' "

"The broader the prosecutorial discretion, the narrower must be the right of review thereof, and consequently our involvement is intended as but a guard against its indiscriminate or invidious use. When, as here, hearing is held and evidence received by the court, the applicant must show preponderantly an abuse of such discretion. See, also, United States v. Torquato, 602 F.2d 564, 568-570 (3d Cir. 1979)."

Subsequently we noted in an unreported opinion, Commonwealth v. Riley and Boyles, filed to Ptn. 90 of 1984 at pg. 4:

"Our statement of the above principles [from Commonwealth v. Braun, supra] has recently been quoted and cited with approval in Commonwealth v. Fisher, 28 D.&C.3d 428 at 433-435 (Monroe Co. 1984). They are in keeping with the recognition that a district attorney is a quasi-judicial officer who, in carrying out his duties, is granted by the law 'wide discretion in the exercise of which he acts in a judicial capacity.' Commonwealth ex rel. Specter v. Martin, 426 Pa. 102 at 113-114, 232 A.2d 729 at 736 (1967)."

In the instant matter Mr. Santoni has failed to show any abuse of prosecutorial discretion whatsoever on the limitations issue.

Irrespective of the foregoing there is another reason not referenced by Attorney Cohen as to why the proposed prosecution must not go forward. As pointed out in Commonwealth v. Fisher, supra, at 435, a purpose of private complaint disapproval is a pros-

ecutor's "duty not to press a charge unsupported by legal evidence." The ·evidence adduced at hearing established that Mr. Cooney simply is not in violation of 18 P.S. §5511(a)(1). Mr. Santoni's written version of the facts, more detailed in the separate affidavit accompanying his complaint than typed in the complaint itself, was admitted into evidence as Commonwealth Exhibit 1. This exhibit reveals that the incident commenced when Mr. Cooney asked about the whereabouts of "his cat (Mr. Don)." The testimony supports the fact that Mr. Don was the very cat killed and that it was indeed owned by Mr. Cooney at the time. It is expressly provided in §5511(a) (1) that:

"A person commits a misdemeanor of the second degree if he willfully and maliciously kills, maims or disfigures any domestic animal *of another person* . . . ." (Emphasis supplied.)

This subsection consequently establishes a statutory crime only for the deliberate killing of someone else's animal. See Commonwealth v. Wilt, 28 Leh. L.J. 460 (1960) at 462; Commonwealth v. Ganster, 41 D.&C. 383·at 384, 55 York 1 at 2 (1941).

The reason why one's own animals were excluded from this limited offense is not immediately apparent — perhaps the legislature could not comtemplate the commission of so dastardly and inhuman an act as the calculated and brutal slaying or torture of a defenseless animal belonging to the perpetrator himself or perhaps the exclusion was an ill-conceived notion grounded upon some antiquated legal proposition that one cannot kill, maim or disfigure his own "property." Such speculation is nonetheless irrelevant. That the omission was not due to oversight or inadvertence but rather conscious and designed is obvious not only from the affirmative add-on restriction of the subsection itself,

but also from the express inclusion of any animal "whether belonging to [the actor] or otherwise" under the *summary* cruelty offense set forth in §5511(c).[7]

To hold open the door to a possible ultimate determination that one is guilty of a misdemeanor crime of killing his own feline would be to usurp a legislative function and to judicially create such an offense where one does not now exist. Therefore, even had a manifest abuse of prosecutorial discretion been present on the statute of limitations question, the language of §5511(a)(1) is so plain and unambiguous with regard to the subject-matter of the offense as to preclude us from expanding it under the guise of interpretation by permitting this charge to proceed toward initial trial in a court of record.

On both of the preceding bases we accordingly enter the following

## DECREE

And now, this January 23, 1986, the disapproval of the subject complaint by the Blair County District Attorney's Office is hereby sustained and the purported criminal charge brought under §5511(a)(1) is dismissed.

---

7. Since private complaint submission for prosecutorial approval under Pa.R.Crim.P. 133(a) applies only to misdemeanors and felonies — court of record cases — complainant-appellant might have secured a summary trial on the merits before the magistrate by pursuing this lesser charge. Even in summary cases, however, "The district attorney may in his discretion require review of such complaint prior to its being submitted to the issuing authority." See Comment to Pa.R.Crim.P. 51A(4), now superceded and replaced but continued, effective Jan. 1, 1986, by Pa.R.Crim.P. 65 and 66.